STATE of Iowa, Appellee,

v.

Kenneth Eugene REDMON, Appellant.

No. 58546.

Supreme Court of Iowa.

Aug. 30, 1976.

Lynn H. Ball, Bloomfield, for appellant.

Richard C. Turner, Atty. Gen., Michael W. Coriden, Thomas Mann, Jr., Asst. Attys. Gen., John B. Martin, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON and McCORMICK, JJ.

MASON, Justice.

The sole issue presented by defendant's appeal in this criminal case is whether the trial court's refusal to instruct as requested by the defense on the offenses of assault and battery and assault with intent to inflict great bodily injury as lesser included offenses of burglary with aggravation was prejudicial error in light of the manner in which the greater offense was charged in the accusatory pleading.

Kenneth Eugene Redmon was charged by county attorney's information filed January 7, 1975, with the crime of burglary with aggravation in violation of sections 708.1 and 708.2; The Code. The information did not use the words of the statute in charging defendant with burglary with aggravation. Instead, the means used to carry out the criminal activity were originally alleged in this fashion: "did willfully, unlawfully and feloniously break and enter into the dwelling house owned by Aileen Girdner with intent to commit a public offense, to-wit, Assault with intent to inflict bodily injury, and thereafter armed himself with a glass soft drink bottle and did assault and inflict injury upon the person of Aileen Girdner, against the peace and dignity of the State of Iowa and contrary to the statutes made and provided for in Sections 708.1 and 708.2 of the 1973 Code of Iowa as amended."

The morning of the trial the State moved to amend the information to read in part, "assault with intent to inflict great bodily injury" rather than "assault with intent to inflict bodily injury." The defense stated it had no objection, the amendment was allowed and the matter proceeded to trial.

At the close of all the evidence counsel were furnished with copies of the court's instructions and time was given for both parties to make objections and take exceptions thereto. At this point defendant renewed his request, originally urged three days before trial, that the court instruct on the lesser offenses of assault and battery and assault with intent to do great bodily harm or great bodily injury. Defendant also objected to instructions 7 and 14. The requests were denied and the matter submitted to the jury. The jury returned a verdict finding the defendant guilty of the offense charged in the information. As indicated, defendant appeals from judgment imposing sentence on that conviction.

The events leading to this prosecution occurred the evening of December 11, 1974, when defendant gained access through a basement window into the Bloomfield home of Mrs. Aileen Girdner, a 60-year-old deaf woman. Redmon found a soft drink bottle in the basement, proceeded to Mrs. Girdner's bedroom on the main floor and struck her on the head with it. Although the bottle broke, Mrs. Girdner was not rendered unconscious. In the ensuing scuffle, defendant hit her and tried to strangle her. When she somehow turned on a light defendant's violence ceased.

Redmon then proceeded to the home of Mrs. Golda Fern Huggins, who was aroused by loud knocking at her door around 11:00 p. m. Defendant, covered with blood, told Mrs. Huggins he had made a mistake and to call the police. He then hurried across the street to a Mrs. White's porch.

The police received (presumably) Mrs. Huggins' call at 10:59 p. m., and Assistant Chief of Police James Oswalt and Officer William Brown proceeded to the scene. Oswalt recognized the sobbing, bloodied Mrs. Girdner on the porch as well as defendant holding his head in his arms and repeating, "Why did I do it."

Oswalt told Officer Brown to call an ambulance. Defendant was placed under arrest and taken by Brown to the Bloomfield police station. Meanwhile Mrs. Girdner had apparently walked to her house. She was found lying on the dining room floor vomiting and bleeding. The ambulance later took her to the hospital, where Dr. R. W. Conn's examination revealed deep lacerations, a cerebral concussion, multiple bruises and contusions.

Defendant, who officers testified was cooperative, cool, rational and not intoxicated,

was advised of his constitutional rights and privileges as mandated in *Miranda v. State of Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Thereafter, he voluntarily submitted a verbal confession and signed a written statement. From the police station defendant was taken to the hospital where Dr. Conn supervised the taking of blood and urine samples and fingernail scrapings. These were subsequently delivered to the Criminalistics Laboratory in Des Moines. Criminalist Michael J. Petersen found "150 milligrams per cent" blood alcohol but no trace of amphetamine in the urine sample.

Officers Brown, Horn and Assistant Chief Oswalt returned to Mrs. Girdner's home, discovering a basement window screen removed and window pushed in. In the bedroom were broken glass and blood. The room was in a general mess.

Previous to trial, "Affirmative Defense of Defendant" was filed wherein it was asserted the influence of alcohol and amphetamine induced psychosis prevented defendant from forming the requisite intent to commit the crime charged. Trial testimony indicated a history of defendant's drug problems, particularly with amphetamines. Defense witnesses testified the accused took large amounts of amphetamines.

More specifically, these witnesses imparted a rather thorough story of defendant's actions the afternoon and evening of December 11. It appears Redmon drank considerable amounts of beer and either smoked himself or helped smoke several marijuana cigarettes. Defendant testified he also consumed some amphetamine pills.

While it remained undisputed defendant was a nonviolent person, including times when he was intoxicated, at least two witnesses testified defendant was in a hostile mood that evening. Several defense witnesses stated defendant was intoxicated, whether it be on beer or amphetamines.

It appears defendant's history of drug consumption commenced in earnest while he was stationed in West Germany during his tour of duty in the Army. These problems led to his eventual discharge after attempted rehabilitation. A subsequent two-month course of treatment at the VA hospital in Iowa City was concluded in a diagnosis Redmon suffered from "amphetamine psychosis." Defendant testified he saw "strange things" such as his boots walking by themselves, snakes, sabortoothed tigers, people in Roman hats throwing fireballs, and, most important, appearances and threats by the devil himself.

Dr. Harvey Arthur Mahannah, psychiatrist, testified for the defense. He has received training on the effects of alcohol and drugs such as amphetamine on the thinking process. The doctor also has treated some 250 people by hypnosis, including defendant. Through interviews and a hypnosis induced "moderate to deep trance" Dr. Mahannah determined defendant was impatient and impulsive—"a ready candidate for having difficulties with especially amphetamine."

The psychiatrist concluded defendant was an amphetamine psychotic the night of December 11, 1974. Such a state resembles paranoid schizophrenia and effects perception distortion, preoccupation and distorted thinking connected with an inability to connect thoughts, and a dreamlike world with visual hallucinations. This would render a person unable to associate his thoughts well enough "to develop a well-programmed course or intent."

It was stated defendant's cool, rational appearance following arrest and his sensation of watching himself in action in the victim's bedroom were consistent with amphetamine psychosis. Furthermore, since such psychosis may last several weeks after ingestion and consumption by the system of amphetamine, a negative finding of the drug in urine, the doctor said, would not be inconsistent.

Dr. Mahannah conceded on cross-examination defendant's jail status and the clinical setting may have influenced the "content" of the material produced. It was also adduced authority exists for the opinion that hypnotic statements may be distorted, exaggerated and totally inaccurate. While defendant knew what he was doing, the

doctor was not certain defendant knew the "quality" of his acts. The doctor thought it was doubtful defendant could have formulated a plan, although he could have carried a thought for two minutes—presumably time enough for defendant to gain entrance and assault his victim. Such would, however, have been "very difficult" in this witness' opinion.

The State in rebuttal called Dr. Paul Loeffelholz, psychiatrist for the Iowa Security Medical Facility at Oakdale where defendant had been admitted for evaluation. He did not utilize hypnosis on defendant because of its unreliability. Contrary to defense expert's testimony, Dr. Loeffelholz stated a person can actually lie while in a hypnotic state.

It was Loeffelholz' conclusion defendant was not an amphetamine psychotic; there was no inability to think, deal with his environment, emotions, or to relate well with others. Rather, defendant, above average in intelligence, was well aware of his predicament and seemed to be in search of an excuse for his behavior—thus, drugs and the devil.

Loeffelholz opined defendant became unhappy and frustrated following his resumption of drug use after the Iowa City treatments. This frustration led to the need to do "nice things." An example was defendant's request earlier in the evening of December 11 of Mrs. Girdner to make a dress for his younger sister. When Mrs. Girdner stated she did not sew any more, she interfered with defendant's efforts to feel good.

The doctor concluded defendant was not acting under any beliefs the devil was making him do things. The clinical findings were consistent with the theory defendant, at the time he went through the basement window, intended to inflict injury.

I. In his attack on the trial court's failure to instruct as requested by the defense upon the offenses of assault with intent to inflict great bodily injury and assault and battery defendant asserts burglary is a specific intent crime and that drug or alcohol intoxication may render one incapable of forming that intent. Stated otherwise, if a defendant is so intoxicated or under the influence of drugs that he is incapable of forming the specific intent of committing a public offense at the time of the breaking then he is not guilty of burglary. Defendant insists there was sufficient evidence in the record concerning his mental condition to generate a jury question on the issue of his ability to formulate the specific intent required for burglary conviction. It is conversely argued assault crimes are ones of general intent only wherein intoxication is not a defense.

In this connection defendant maintains the trial court's refusal to instruct on assault and battery and assault with intent to inflict great bodily injury prohibited the jury from reaching the following conclusions, which were supported by the evidence: (1) due to defendant's drug and/or alcohol produced mental state he was unable to formulate the requisite intent to commit a burglary, but could be convicted of assault and battery, or (2) even though at the time of the breaking and entering defendant was incapable of forming the requisite intent for a burglary, if between that time and the time of the assault he formed the intent necessary for assault with intent to inflict great bodily injury he could be guilty of assault or assault with intent to do great bodily injury.

Defendant's arguments rest on a contention assault and battery and assault with intent to inflict great bodily injury are lesser included offenses within the greater offense of burglary with aggravation.

"Authority for submission of lesser offenses is found in two Code sections. The first is § 785.5 which provides:

" 'Upon an indictment for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment, and guilty of any degree inferior thereto, or of an attempt to commit the offense, if punishable by indictment.'

"The second is § 785.6 which provides:

" 'In all other cases, the defendant may be found guilty of any offense the commis-

sion of which is necessarily included in that with which he is charged in the indictment.'" *State v. Billings*, 242 N.W.2d 726, 730 (Iowa 1976).

The following statutes which are specifically referred to in the information provide:

"708.1 Definition—punishment. If any person break and enter any dwelling house in the nighttime, with intent to commit any public offense; or, after having entered with such intent, break any such dwelling house in the nighttime, he shall be guilty of burglary, and shall be punished according to the aggravation of the offense, as is provided in sections 708.2 and 708.3."

"708.2 Aggravated offense. If such offender, at the time of committing such burglary, is armed with a dangerous weapon, or so arm himself after having entered such dwelling house, or actually assault any person being lawfully therein, or has any confederate present aiding and abetting in such burglary, he shall be imprisoned in the penitentiary for life or any term of years."

The law in the area of lesser included offenses has seen considerable confusion. This "* * * has stemmed from the statutory term 'necessarily included.' See section 785.6, The Code, which provides a defendant may be convicted of offenses 'necessarily included' in the greater one. Our holdings in *State v. Hawkins* [203 N.W.2d 555 (Iowa 1973)] and *State v. Habhab* [209 N.W.2d 73, 74–75 (Iowa 1973)] should demonstrate the term 'necessarily included' refers to *elements* of the offenses and not to imagined *facts*. * * * [citing authorities]." *Everett v. Brewer*, 215 N.W.2d 244, 246 (Iowa 1974). (Emphasis in original).

The law is clear in this state two steps must be taken "* * * in determining whether one offense is included within another. The first is a consideration of the elements. The lesser offense must be composed solely of some but not all elements of the greater crime. The lesser crime must not require any additional element which is not needed to constitute the greater crime. The lesser offense is therefore said to be *necessarily* included within the greater. * * * [citing authority].

"It is only after the elements of the lesser crime are shown to be necessarily included in the greater crime that a second inquiry is made. The second inquiry is a factual one, undertaken on a case by case basis. * * * ." *State v. Stewart*, 223 N.W.2d 250, 252 (Iowa 1974), cert. den., 423 U.S. 904, 96 S.Ct. 205, 46 L.Ed.2d 134. (Emphasis in original).

The same pronouncement is stated in *State v. Smith*, 223 N.W.2d 223, 225 (Iowa 1974), in this fashion:

"With regard to that statutory enactment [section 785.6, The Code] two steps are involved in determining whether one offense is necessarily included within another. The first focuses upon the legal or element test, and the second requires an ad hoc factual determination. As to the former, a lesser offense must be composed of some but not all elements of the greater crime yet cannot require an element not needed to constitute the greater offense. * * * [citing authorities]."

*State v. Rosewall*, 239 N.W.2d 171, 174 (Iowa 1976), has this statement of the tests to be applied in determining when a lesser included offense should be instructed upon:

"Under our cases a lesser included offense is appropriate for submission when (1) the elements of the lesser offense are an elementary part of the greater offense (the legal test) and (2) there is a factual basis in the record for submitting the included offense to the jury (the factual test). * * * [citing authorities]."

■ The statutory elements of burglary (section 708.1, The Code) have been defined to be (1) the breaking and entering of a dwelling, (2) in the nighttime, (3) with intent to commit a public offense. See *State v. Hinkle*, 229 N.W.2d 744, 750 (Iowa 1975).

■ The offense of an assault, or an assault and battery, is declared criminal by section 694.1, The Code; but, for a description of the offense, or in order to ascertain what would amount to an assault, or an assault and battery, we must resort to the common law definition. *State v. Twogood,*

7 Iowa 252, 253; *State v. Vick*, 205 N.W.2d 727, 730–731 (Iowa 1973).

Assault "has been defined as 'an attempt or offer, with force or violence, to do a corporal hurt to another whether from malice or wantonness, with such circumstances as denote, at the time, an intention to do it, coupled with a present ability to carry such intention into effect,' \* \* \* [citing authorities]." *State v. Townsend*, 238 N.W.2d 351, 354 (Iowa 1976). See also 3 Underhill's Criminal Evidence, (Fifth Ed.), section 684.

In *State v. Yanda*, 259 Iowa 970, 971, 146 N.W.2d 255, 255–256, the court tells us, " \* \* \* an assault and battery is the unpermitted and unlawful application of physical force to the person of another in a rude and insolent manner or with a desire to do physical harm.

"It is at once apparent these two offenses [assault and assault and battery] are separate and distinct but nevertheless related.

"Assault is but the initial stage of an act which is aggravated by a battery. Stated otherwise a battery necessarily includes an assault, the latter inhering in the former. \* \* \* [citing authorities]."

■ The difference between an assault and an assault with intent to inflict great bodily injury is the specific intent to inflict an aggravated injury. See *State v. Richardson*, 179 Iowa 770, 780, 162 N.W. 28, 31 and *State v. Sommer*, 249 Iowa 160, 177, 86 N.W.2d 115, 126.

In *State v. Decklever*, 172 N.W.2d 109, 110 (Iowa 1969), this court said:

" \* \* \* The crime of assault with intent to inflict great bodily injury is not susceptible of exact definition. It is difficult to define with exactness or definite limitations just what a great bodily injury is. It is an injury to the person of a more grave and serious character than an ordinary battery but it cannot be definitely defined. The gist of the offense is the intent, which is seldom capable of direct proof and ordinarily is disclosed by all the circumstances attending the assault, together with all relevant facts and circumstances as disclosed by the evidence. The extent of the injury, if any, although not in itself determinative of the intent, may be considered as bearing thereon. A person is presumed to have intended the natural result of his intentional act." See also *State v. Petsche*, 219 N.W.2d 716, 717 (Iowa 1974) and *State v. Bell*, 223 N.W.2d 181, 184 (Iowa 1974).

In 1 Underhill's Criminal Evidence, (Sixth Ed.), section 55, it is said:

" \* \* \* Intent is of two kinds, specific and general. Specific intent is present when from the circumstances the offender must have subjectively desired the prohibited result. General intent exists when from the circumstances the prohibited result may reasonably be expected to follow from the offender's voluntary act, irrespective of any subjective desire to have accomplished such result."

The distinction between specific and general intent crimes when the applicability of the defense of voluntary intoxication becomes an issue is pointed out in *People v. Rocha*, 3 Cal.3d 893, 92 Cal.Rptr. 172, 479 P.2d 372, 375–377 and in *People v. Hood*, 1 Cal.3d 444, 82 Cal.Rptr. 618, 462 P.2d 370, 377–379.

■ It is our view under such circumstances that assault and battery is properly classified as a "general intent" crime whereas assault with intent to inflict great bodily injury and breaking and entering with intent to commit a public offense are "specific intent" crimes. This would also be true when inability to formulate the specific intent required for conviction was due to a mental state produced by ingestion of drugs.

The terms "legal or element test" and the "factual test" or ones of similar import have been repeatedly used by this court in dealing with the doctrine of "necessarily included offenses." See authorities cited, supra.

The factual test merely requires there be enough evidence introduced at trial to justify the submission to the jury of an instruction on the proposed lesser included offense.

*State v. Conner,* 241 N.W.2d 447, 461 (Iowa 1976).

The legal elements test is succinctly set forth in *State v. Stewart,* 223 N.W.2d at 252, where, as pointed out, the court said:

" * * * The lesser offense must be composed solely of some but not all elements of the greater crime. The lesser crime must not require any additional element which is not needed to constitute the greater crime. * * *."

■ When examination of the elements of the crime charged and those of the offenses claimed by defendant to be necessarily included under section 785.6, The Code, is restricted to a consideration of the legal elements of the three offenses, defendant's position cannot be sustained. Whether those elements are derived from statutory enactment or common law pronouncement, it is clear neither assault and battery where battery is an essential element of the offense nor assault with intent to inflict great bodily injury where assault with that intent is essential is a necessarily included offense of aggravated burglary under such a restricted approach.

■ Applying the statutory or common law approach to the present record it would have been possible for defendant to have committed aggravated burglary without having first committed either assault with intent to inflict great bodily injury or assault and battery. *State v. Hawkins,* 203 N.W.2d 555, 557 (Iowa 1973). It is the intent to commit a public offense at the time of the breaking and entering which is crucial. Failure to complete the intended public offense does not negate burglary as the statute requires only intent. *State v. Hinkle,* 229 N.W.2d at 751.

■ II. Nevertheless, defendant insists the court should look to the information in determining whether the proposed included offenses should be submitted. He contends the majority view seems to be that in applying the legal elements test the court should look to the specific statutory language creating the crime *and* the language in the accusatory pleading charging defendant with the crime.

This contention presents the question whether the elements of the greater offense are to be determined solely with reference to the statutory language creating the crime or does the language of the information charging the crime have a bearing on the analysis.

In support of his position defendant cites *State v. McCall,* 245 Iowa 991, 63 N.W.2d 874 and Barnett, The Lesser-Included Offense Doctrine: A Present Day Analysis for Practitioners, 5 Conn.L.Rev. 255.

In *McCall,* 245 Iowa at 998–999, 63 N.W.2d at 878, there is language to the effect that the indictment may charge a lesser offense which, had the statutory wording only been utilized, would not be a necessarily included offense. The court stated:

"In *State v. Costello,* 200 Iowa 313, 316, 202 N.W. 212, 213, the court instructed upon assault and battery as an included offense in an indictment for assault with intent to commit great bodily injury. This was held incorrect, because, although the evidence did show acts constituting assault and battery, 'there was no charge *in the indictment* of any act which could constitute an assault and battery.'

"The language of the statute 'necessarily included' in the offense charged, is explicit and its meaning is clear. It is not enough that the evidence in some cases or in most cases would be sufficient to include the lesser offense. Our decisions involving included offenses in cases based upon indictments charging assault with intent to commit rape, illustrate this. They hold an indictment for assault with intent to commit rape (*in ordinary language*) does not include a charge of assault and battery. The reason stated is that defendant may desist without touching the person of the female. However, the evidence in most of such cases would support a charge of assault and battery.

"*State v. Hoaglin,* 207 Iowa 744, 752, 753, 223 N.W. 548, 551, states:

" 'An indictment charging assault with intent to commit rape (statutory or otherwise) charges assault, *and it may be so drawn as to charge assault and battery. Whether or not the indictment for assault with intent to commit rape charges assault and battery will depend solely upon the wording of the indictment.* * * *

" 'It is obvious that, where an indictment for assault with intent to commit rape fails to charge a battery, then it would be improper for the court to submit to the jury the crime of assault and battery.'

"*State v. Ellington,* 200 Iowa 636, 639, 204 N.W. 307, 309, states:

" 'Where the charge is assault with intent to rape, assault and battery need not be submitted, unless the indictment charges force.' " (Emphasis supplied).

At page 291 of 5 Conn.L.Rev. the author of the article says:

" * * * [A] lesser crime is an included offense when it consists of legal elements which must always be present for the greater crime to have been committed in the *manner in which the greater crime is charged in the accusatory pleading.*" (Emphasis supplied).

One of the many cases discussed in the foregoing article is *State v. Brown,* 163 Conn. 52, 301 A.2d 547, 552–553, where the court said:

" * * * Courts have taken three approaches in determining whether a crime is a 'lesser included crime' when the evidence would support a conclusion that the lesser crime was committed: (1) The included crime may be one consisting solely of elements which must always be present for the greater crime to have been committed; (2) it may be one consisting solely of elements which must have been present for the greater offense to have been committed in the manner described by the information or bill of particulars thereto; (3) or it may be a crime which the evidence suggests and which could have been included in the information. The Connecticut rule on this question follows the second course and is well stated in *State v. Monte,* 131 Conn. 134, 135,

38 A.2d 434: '[I]f upon the evidence an accused can properly be found guilty of a lesser offense than that charged and the allegations of the information include the elements constituting the lesser offense, he is entitled to have the jury instructed as to' the lesser offense. * * *

"The test for determining whether one violation is a lesser included offense in another violation is whether it is possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser. If it is possible, then the lesser violation is not an included crime. * * * [citing authority]. In other words, to require an instruction on a lesser included offense, the lesser offense must not require any element which is not needed to commit the greater offense in the manner alleged in the information or the bill of particulars. * * * [citing authority]. Limiting the scope of the doctrine in this way obviates any necessity for charging on every offense that the evidence suggests the defendant may have committed in the course of the crime charged—even though it has nothing to do with the crime charged."

In *State v. Anderson,* 270 So.2d 353, 356 (Fla.1972), another case reviewed in the cited article, the supreme court of Florida in dealing with the problem of included offenses said:

"The accusatory pleading must apprise the defendant of all offenses of which he may be convicted. This simply means that when the State makes a charge, ex parte though it may be, it is asserting that the defendant is guilty and may be convicted of that offense, all degrees thereunder when the offense is divided in degrees, the attempt to commit the offense, and any lesser offense which is an essential ingredient of the major crime charged.

"In addition, it means that he may be convicted of any lesser offense, which, although not an essential ingredient of the major crime, is spelled out in the accusatory pleading in that it alleges all of the elements of the lesser offense and the proof at trial supports the charge. The gist is not

what the defendant would like to persuade a jury he may be guilty of, but that the accusatory pleading apprise him of all offenses of which he may be convicted."

In *State v. Washington*, 543 P.2d 1058, 1062 (Or.1975), the court expresses the view that, "The pleadings or indictment approach is followed in the majority of jurisdictions throughout this country and is codified in Oregon * * * [ORS 136.460 provides ' * * * the commission of which is necessarily included in that with which he is charged in the accusatory instrument * * *.']."

Under the foregoing statements, it could be reasonably argued that where the accusatory pleading alleges, for example, means by which a defendant committed the greater crime which would necessarily include commission of lesser crimes, such would be crimes, under the terms of section 785.6, "necessarily included in that with which he is charged in the indictment."

Colorado adopted a different approach in *People v. Rivera*, 525 P.2d 431, 433–434 (Colo.1974) (en banc). The court first noted that the briefs filed by both defendant and the People pointed up that the problem of determining what is a lesser included offense under Colorado law has received varied treatment from that court. Expressing the view that the variation was largely attributable to the different tests which had been employed the court went on to say:

"First, there is the 'statutory test.' By the weight of authority, this court has held that in determining whether an offense is lesser included, the statutes which set forth the constituent elements of each crime must be compared. * * *

"In contrast, there is the so-called 'evidentiary test.' Application of this view has resulted in holding that an offense is lesser included when the evidence of the two crimes, as shown at trial, establishes the elements of the lesser offense. * * * [citing authorities].

"* * * [W]e believe that the better view is that the statutes, and not the evidence, must establish the essential elements of the lesser included offense. In other words, any conflict in the prior cases is resolved now by our holding that, in determining whether an offense is lesser included, the statutory test—which mandates that the greater offense must establish every essential element of the lesser included offense—will be applied. * * * [citing authority].

"The basis for so holding is that the statutory test is easily and more uniformly applied and a defendant is entitled to fair notice of the charges against him. The only reasonable method of insuring such notice is the statutes which set forth the constituent elements. It would be haphazard and unfair to say to a defendant that he must defend on the principal charge and any other charge which the evidence established. Guided by these interests, we follow the authority holding the statutory test shall be applied in determining what is a lesser included offense."

However, the Colorado court later in the opinion qualified the statutory approach by announcing that when warranted by the evidence, a theory of the case instruction which permits the jury to find a defendant innocent of the principal charge and guilty of a lesser charge should be given when requested by the defendant but such instruction should be denied when requested by the prosecution. The instruction should not be given on the court's own motion. It should be pointed out defendant in the case before us does not urge this court to adopt a similar qualification.

We do not understand defendant to urge the evidentiary test mentioned in *Rivera*. In any event, such contention was laid to rest by this statement in *Everett v. Brewer*, 215 N.W.2d at 246:

"* * * In *State v. Habhab* we reaffirmed *State v. Hawkins* but rejected the notion the facts alone can supply a needed element for an included offense."

Instead, defendant urges this court to adopt a dual test for determining whether a proposed lesser offense is necessarily included in the greater offense charged consisting

of the pleading or indictment approach and the legal element test.

The Maine court rejected the pleadings approach in *State v. Leeman,* 291 A.2d 709, 710–711 (Me.1972), by stating:

"While contrary authority is found in the decisions from several jurisdictions [citing a California case setting out the rule the pleading should be considered], the general rule of law permits a conviction of a lesser offense than that charged only if the lesser, as legally defined, is *necessarily* a constituent part of the greater, as legally defined. * * * We are satisfied that our own decisions have followed the *majority view* which our own Rule 31(c) has adopted and that it is the better reasoned rule. The test of whether or not a lesser offense is 'necessarily included' in a greater is clearly and concisely expressed by Professor Orfield in his comment on Federal Criminal Rule 31(c), the language of which was adopted in our own Rule 31(c).

" 'To be necessarily included in the greater offense, the lesser offense must be such that it is impossible to commit the greater without having committed the lesser.' " (Latter emphasis supplied).

In *State v. Smith,* 55 Wis.2d 304, 198 N.W.2d 630, 633, the court held "* * * the test for a lesser included offense is not the peculiar nature of a single defendant's crime, rather it is whether the lesser offense is *statutorily* within the greater." (Emphasis supplied).

We decline to adopt defendant's contention that we should approve a dual test for determining whether a proposed lesser offense is necessarily included in the offense charged.

In the court's opinion the statutes and not the accusatory pleading or charge must establish the essential elements of the offense charged. We therefore hold the statutory or legal element test should be the sole approach in determining what are the elements of the offense charged and that the language of the information or indictment charging the crime has no bearing on that analysis. Such test can be more uni-

formly applied and still provide a defendant with fair notice of the charge against him.

In reaching this determination we have considered every contention and argument urged by defendant whether specifically referred to or not in this opinion.

The case is

Affirmed.