**STATE of Iowa, Appellee,**

v.

**Allen LANGLEY, Appellant.**

**No. 61106.**

Supreme Court of Iowa.

May 17, 1978.

Cone & Tyler, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Faison T. Sessoms, Jr., Asst. Atty. Gen., and Dan L. Johnston, Polk County Atty., for appellee.

Considered by MOORE, C. J., and MASON, RAWLINGS, UHLENHOPP, and REYNOLDSON, JJ.

UHLENHOPP, Justice.

In this appeal defendant Allen Langley raises issues growing out of his conviction of sodomy which the State alleges occurred in the jail of Polk County, Iowa.

Defendant's issues compel us to recite some of the evidence. The jury could find that on December 2, 1976, defendant as well as Richard Knedler, Verlin Brown, Eddie Abney, and Charlie Cobb, among others, were male inmates of the jail. Abney shared a cell with Cobb.

Defendant and Knedler were pugnacious. Defendant picked a fight with Abney and bit him. Following the noon meal, Knedler entered Abney's cell and, after Abney refused to give him "a blow job," began hitting Abney. Defendant also entered the cell and began beating Abney, who was dazed and scared.

Later, defendant and Knedler would not permit Abney to get his evening meal—perhaps to conceal his beaten appearance from jailers. After mealtime, defendant again entered Abney's cell and beat him. Abney's nose bled and his eye was swollen. He was afraid to call the jailers because of what defendant and Knedler might do.

Next, defendant and Knedler forced inmate Brown to let Cobb give him a "blow job." Abney testified that then "I heard them hitting, you know, on Brown and telling Brown to go ahead and screw Cobbs," and, "A few minutes later Cobbs came back to the cell and laid down."

Thereafter defendant Langley came into Abney's cell again. Abney testified:

Q. (Prosecutor) And what happened when Mr. Langley came back in? A. Well, he started looking at me, kept on saying, just kept hitting on me and kicking me.

Q. Did anyone else come into the cell? A. Yes, Knedler came back in. . . .

Q. What happened when Mr. Knedler came back in? A. Started hitting on me again.

Q. Then what happened? A. Then they just held—well, Langley grabbed my legs at the bottom of the bed and told Cobbs to give me a blow job. . . .

Q. Now when Mr. Cobb was brought over to your bunk, what, if anything, took place in regard to Mr. Cobb and Mr. Langley and Mr. Knedler with yourself? A. Well, he told me to let Cobbs give me a blow job. I said no and just kind of curled up. I pulled my knees up to my chest and that is when Knedler—I mean Langley pulled my legs. Knedler was up by my head holding my—holding me back and that's when they told Cobbs to open my pants. . . .

Q. (Defense Counsel) Was anyone outside the cell looking in? A. Yes.

Q. Who? Waldron and a bunch of other guys. . . .

Q. (Prosecutor) What did Mr. Cobb do then? A. He took out my penis and started sucking on it and then after that they started hitting on me. . . .

Q. Once that was done, what happened next? A. Well, they started beating on me, Langley and Knedler started beating on me and told me to get up and screw Cobbs in the ass and I said no, I wasn't going to do it, so they kept on beating—Cobbs laid there beside me—

and finally they got me up and made me screw Cobbs in the ass.

Subsequently a grand jury investigated activities in the jail and returned several indictments charging sexual offenses and other misconduct by inmates. In connection with the occasion in question, the grand jury charged defendant with assault with intent to do great bodily injury and with sodomy. In a prior trial on the assault with intent charge, a jury found defendant guilty of the included offense of assault and battery. In the present trial on the second charge, a jury found defendant guilty of sodomy, as alleged. The trial court sentenced defendant accordingly, and defendant appealed.

In this court defendant presents several issues: (1) Did the trial court commit reversible error in sustaining a motion in limine by the State? (2) Is the sodomy statute unconstitutional? and (3) Was defendant twice placed in jeopardy?

I. *Motion in Limine.* Before trial the State made a motion in limine on several subjects including the following:

Mr. Ramey (Prosecutor): At this time, Your Honor, comes now the State of Iowa and moves the Court through motion in limine to restrict the defense counsel for defendant and his witnesses from discussing or raising the issue in this case whether or not the State's witness, Eddie Abney, has filed or intends to file any lawsuit against Polk County, employees of Polk County, the defendant herein or any other prisoner in the Polk County jail stemming from this very same incident, states to the court that we feel this would be prejudicial toward the jury and of no relevance to this criminal case. . . .

The Court: Well, first, the court feels there is no materiality in this case as to the intent of the witness to file a lawsuit or not to file a lawsuit.

Mr. Cone (Defense Counsel): If the court would permit me to enter a resistance to that part of this motion, I believe it has a very direct bearing in that it gives—it certainly gives the victim some

incentive to lie. It goes directly to his credibility in his testimony. If convictions are found for sodomitical acts later on in a civil lawsuit, they are certainly going to bolster his case there and I think that it certainly goes to his credibility and should be brought out in the course of this trial.

The Court: The court in spite of that possibility is going to sustain the motion in limine with regard to civil lawsuits.

At trial defendant made no offer of proof regarding any actual or contemplated civil litigation, did not ask to take up such a subject with the court at any time during the presentation of the State's evidence or his own evidence, and did not otherwise make a trial record on the subject. At the threshold of this issue we thus have the question whether defendant presents anything for review.

We do not have here the situation of a motion by a defendant to suppress a confession or property seized by officers, when evidence is presented at a hearing on the motion and the court makes a final decision overruling it. Such a ruling is final. *State v. Feddersen,* 230 N.W.2d 510 (Iowa). Here we have motion in limine made by the State, no evidence is introduced on presentation of the motion to the trial court, counsel argue in generalities to that court without showing what the specific evidence is if any, and the court sustains the motion but does not preclude defendant from presenting the matter for reconsideration when the parties try the case or from then making an offer of proof. Is such a pretrial ruling a final one?

■ Ordinarily the granting or rejecting of a motion in limine is not reversible error; the error comes, if at all, when the matter is presented at trial and the evidence is then admitted or refused, as the case may be. An exception exists where such a motion is granted on a hearing which is evidentiary in nature, the court is completely advised of the factual situation, and nothing occurs at trial to change the status. We stated in *State v. Garrett,* 183 N.W.2d 652, 654 (Iowa):

It has been said granting or rejecting a motion in limine can never be reversible error. 5 Washburn Law Journal, 232, 233. This court has not insisted on a subsequent record where the motion in limine *is granted* on hearing which is evidentiary in nature, the court is completely apprised of the factual situation and nothing occurs at trial to change the posture of the parties. *Gustafson v. Iowa Power & Light Co.,* 183 N.W.2d 212 (Iowa 1971) (decided January 19, 1971).

The reason for the principle is that the ruling is not a final one; it is a red flag to counsel that the evidence is not to be brought before the jury unless and until it is separately taken up with the court in the posture of the case at the trial. We explained this rationale of motions in limine in *Twyford v. Weber,* 220 N.W.2d 919 (Iowa). We then stated at page 923:

In other words, such orders, when the motion is sustained, must be so worded as not to preclude the right of the parties affected thereby to make their record in the absence of the jury, on any material evidentiary matter which they feel entitled to produce in support of their case in view of the record made at that point.

We also stated on the same page:

In the absence of such a subsequent offer on the part of counsel operating under restriction the record on appeal may be so lacking as to not properly present to this court the setting in which the questionable evidence was claimed to be admissible.

We believe this to be true even though, "this court has not insisted on a subsequent record where the motion in limine *is granted* on hearing which is evidentiary in nature, the court is completely apprised of the factual situation and nothing occurs at trial to change the posture of the parties. * * * [citing authorities]." (Emphasis in the original). *State v. Garrett,* 183 N.W.2d at 654.

In the present case the trial court's ruling thus had the effect of telling the parties not to bring the matter of civil litigation before the jury at trial unless and until the matter was taken up before the court itself, and the order did not purport to preclude the parties from so taking up the matter with the court. The parties did not have an evidentiary hearing when they presented the motion in limine, and defendant never took up the subject with the court or made an offer of proof at trial. We are left to speculation as to whether evidence even exists of the character in question or, if so, how it would be used with the other evidence in the case. As we said in *Twyford* at pages 922–923:

The function of a motion in limine is not only to exclude during the voir dire examination and opening statements, reference to anticipated evidence claimed to be objectionable because incompetent, irrelevant, immaterial or privileged but to also restrict opposing counsel in asking questions or making statements in offering such matters *until the admissibility of the questionable evidence can be determined during the course of the trial by presenting to the court in the absence of the jury such evidence by offer and objection.* (Italics added.)

We stated that the motion "adds a procedural step to the offer of evidence."

Since this defendant did not pursue the matter at trial, we conclude that the present case falls under the general rule that orders on motions in limine are not final and reviewable, and that defendant therefore presents nothing for review at this point.

II. *Constitutionality.* Defendant contends our sodomy statute is unconstitutional because it is vague and overbroad and because it denies due process and equal protection. The statute provided at the time of these events, in § 705.1 of the Code of 1975:

Whoever shall have carnal copulation in any opening of the body except sexual parts, with another human being, or shall have carnal copulation with a beast, shall be deemed guilty of sodomy.

As to vagueness, a statute is not constitutionally infirm if its meaning can be fairly

ascertained by references to judicial determinations. *State v. Pilcher,* 242 N.W.2d 348, 353 (Iowa). Defendant contends the statutory words "any opening of the body" are vague, but our decisions show that this language refers to copulation per os, *State v. Simpson,* 243 Iowa 65, 50 N.W.2d 601; *State v. Farris,* 189 Iowa 505, 178 N.W. 361, or per anus. *State v. Schurman,* 205 N.W.2d 732 (Iowa); *State v. Kaster,* 160 N.W.2d 856 (Iowa). Cf. *Rose v. Locke,* 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185. We find defendant's first contention to be without merit.

■ As to overbreadth, defendant's contention cannot stand in the face of *State v. Pilcher,* supra, 242 N.W.2d 348 (Iowa). There this court, by adjudicating on an "as applied" basis—holding the statute unconstitutional as there applied, obviated an overbreadth charge. While the court held the statute could not be constitutionally applied under those facts, it stated at page 360:

> ·We therefore hold the statute cannot constitutionally be applied to alleged sodomitical acts performed in private between consenting adults of the opposite sex. *We do not intimate any view of the constitutionality of the statute as applied in any other factual situation.* (Italics added.)

Since we thus deal with this statute on an "as applied" basis, we hold it immune from an overbreadth attack; we simply will not apply it in an unconstitutional setting. See *Moorman Mfg. Co. v. Bair,* 254 N.W.2d 737, 755 (Iowa), aff'd, 98 S.Ct. 478, 54 L.Ed.2d 311 (U.S.) ("it is ordinarily not unconstitutional as applied unless it is unconstitutional as applied in the specific factual situation before the court"—McCormick, J., concurring specially, quoted in the case of *In the Interest of Lewis,* 257 N.W.2d 505, 510 (Iowa)).

■ The question then is whether the statute is invalid, applied to these facts, on defendant's due process and equal protection grounds. Defendant *forced* Abney to engage in sodomy, with a person of *the same sex,* within a *third person's sight.*

Any of these three factors renders the statute constitutional as applied, but in addition all three factors coalesce here. We hold the statute immune, applied to this case, from attack on due process and equal protection grounds. Decisions tending to support our view are *Raphael v. Hogan,* 305 F.Supp. 749 (S.D.N.Y.); *Lovelace v. Clark,* 83 Ariz. 27, 315 P.2d 876; *Hughes v. State,* 14 Md.App. 497, 287 A.2d 299, cert. den. 409 U.S. 1025, 93 S.Ct. 469, 34 L.Ed.2d 317; *State v. White,* 217 A.2d 212 (Me.); *State v. Crawford,* 478 S.W.2d 314 (Mo.), app. dism. 409 U.S. 811, 93 S.Ct. 176, 34 L.Ed.2d 66, reh. den. 409 U.S. 1051, 93 S.Ct. 536, 34 L.Ed.2d 505; *Commonwealth v. Piper,* 221 Pa.Super. 187, 289 A.2d 193; and *Turner v. State,* 497 S.W.2d 593 (Tex.Cr.App.). See also *Doe v. Commonwealth's Attorney for City of Richmond,* 403 F.Supp. 1199 (3-judge court, E.D. Va.), aff'd, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751, reh. den. 425 U.S. 985, 96 S.Ct. 2192, 48 L.Ed.2d 810; *Enslin v. Wallford,* 565 F.2d 156 (4 Cir.), pet. cert. —— S.Ct. ——, 56 L.Ed.2d 413 (U.S.).

We thus reject defendant's constitutional attack on the statute, as applied here.

III. *Double Jeopardy.* A jury previously convicted defendant of assault and battery based on these events. Defendant argues that since the two crimes grow out of the same episode in the jail, we should bar the second prosecution under episodic immunity. See Art. I, § 12, Iowa Const.; Amend. V and XIV, U.S.Const.; and *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707. But we rejected episodic immunity in *State v. O'Kelly,* 211 N.W.2d 589 (Iowa). See also *State v. Cabbell,* 252 N.W.2d 451 (Iowa). We remain of the view stated in *O'Kelly.*

The question therefore is whether assault and battery is necessarily included in sodomy. If it is, the sodomy prosecution is barred. *State v. Stewart,* 223 N.W.2d 250 (Iowa), cert. den. 423 U.S. 902, 96 S.Ct. 205, 46 L.Ed.2d 134. We determine the elements of the two offenses under the statutory or legal elements test rather than under the language of the particular indictments or informations. *State v. Redmon,* 244 N.W.2d 792 (Iowa).

We have quoted the sodomy statute. This sex crime can be committed by mutual assent; nothing in the statute requires force or unwillingness by one or both of the participants. *State v. Pilcher,* supra, 242 N.W.2d 348, 354 (Iowa) ("Section 705.1 does not require the act to be forced. Expressed differently, consenting sodomitical acts are presumably prohibited the same as are nonconsenting ones."); 70 Am.Jur.2d Sodomy § 4 at 808; 81 C.J.S. Sodomy § 5 at 653. The opposite is true of assault and battery; this offense essentially involves unpermitted acts. *State v. Redmon,* supra, 244 N.W.2d 792 (Iowa); *State v. Yanda,* 259 Iowa 970, 971, 146 N.W.2d 255 ("assault and battery is the unpermitted and unlawful application of physical force to the person of another in a rude and insolent manner or with a desire to do physical harm"). We therefore conclude that legally, assault and battery is not necessarily included within sodomy and that conviction of defendant of the former offense did not preclude prosecution of him for the latter offense.

We find no ground for reversal.

AFFIRMED.