# IN THE COURT OF APPEALS OF IOWA

No. 20-1427
Filed October 6, 2021

**Upon the Petition of**
**REBEKKA ELIZABETH LUEBBERS,**
      Plaintiff-Appellee,

**And Concerning**
**GERHARD AUSTIN LUEBBERS,**
      Defendant-Appellant.
_____

      Appeal from the Iowa District Court for Johnson County, Kevin McKeever,

Judge.

      Defendant appeals from a finding of domestic abuse and the subsequent

protective order. **AFFIRMED.**

      David Burbidge of Johnston, Stannard, Klesner, Burbidge & Fitzgerald

P.L.C, Iowa City, for appellant.

      Amanda L. Elkins and Alyssa C. Pomponio of Student Legal Services, Iowa

City, for appellee.

      Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

Rebekka Luebbers petitioned for relief from domestic abuse against her husband, Gerhard Austin[1] Luebbers, pursuant to Iowa Code chapter 236 (2020). The district court found that an assault had occurred and issued a protective order on October 16, 2020. Arguing the case turns on credibility, Austin characterizes Rebekka's version as inaccurate and urges us to find she failed to prove he intended to assault her. Because we place weight on the credibility judgment of the district court and because Austin's intent was proven through the natural consequences of his actions, we affirm the district court's issuance of a protective order.

**I. Background Facts and Proceedings.**

Austin and Rebekka were married in April 2019. They lived together in Iowa City in September of 2020. On September 11, Austin became angry when the two were in their bedroom because he did not believe Rebekka was being supportive about a medical appointment. One week later, Rebekka petitioned for a protective order. What exactly happened beyond this description is disputed. The record developed as follows.

During the hearing on the requested protective order, Rebekka testified that while she was attempting to comfort him, Austin became upset and got on top of her, holding her down by restraining her upper arms. He then said he wanted to hit her and proceeded to head-butt her in the nose. At that time he said he planned to self-harm, blamed Rebekka for that impulse, and proceeded to punch himself in

---

[1] Gerhard goes by his middle name, Austin.

the face and hit his head on the bedroom doorframe in frustration. He called Rebekka a "bitch," told her she was controlling, and left the room. She followed in an attempt to defuse the situation. Austin said he was going to leave and shoved her into the wall. The force caused her to hit the wall, the door frame, and a dog gate hard enough to knock down both the gate and a picture frame. Austin left the home.

Rebekka had job responsibilities that required her to leave the home,[2] so she left Austin's phone outside for him and locked the door. Later that day, Rebekka called Austin's mother and expressed concerns for his mental health. Rebekka did not see him again until very early the next morning. At that point, Austin apologized for what had happened; then, he took a bath, and she went back to bed.

When Rebekka returned from work the next day, Austin's mother was at the apartment. Rebekka hugged Austin and apologized for calling his mother, recognizing that it was against his wishes, but again expressed concern for him. He became angry and denied that there was a problem apart from Rebekka. He shoved her to the floor—in response, Rebekka slapped him. He hit her once more and left the apartment. The two continued to argue in front of his mother's car until he drove away.

Austin sent Rebekka a text message, telling her he planned to stay with his mother and then move in with friends. Rebekka packed up some of his things, and her mother and her mother's boyfriend came to the apartment. When Austin

---

[2] Rebekka is a recovery assistant and required privacy for a counseling session.

arrived a few hours later, Rebekka's mother argued with him about money that Austin, allegedly, had taken from both her and Rebekka. Austin then yelled "fuck you" and shoved Rebekka's mother. He went across the street to the sheriff's office and brought back a law-enforcement officer to help him collect his belongings. Both parties talked to the sheriff, and no criminal charges were filed. To document her injuries, Rebekka photographed the bruises on her right elbow and both legs; but, at the hearing, she acknowledged the photographs showed other marks that were not related to the dispute.

Rebekka also testified that, in the weeks before these events, when she told Austin she was sad about the turmoil in their relationship, he responded that he really wanted to kill her and then left the apartment. Rebekka reported that Austin had been acting differently and engaged in self-harm in the weeks before the head-butting incident.

As for Austin's recollections, he disagreed with Rebekka's description of events, though he did admit making physical contact with her. At trial, he testified that during the September 11 incident, he was worried Rebekka would hit or bite him so held her arms down. He did not head-butt her, but "pressed [his] head against her forcefully" and then hit his head on the door out of frustration. He told her to leave him alone and left the room. Rebekka followed him into the other room and stood so that he could not leave. He moved her out of his way and left. When he returned for his phone, she had locked him out and put the phone outside, refusing to let him inside and out of the rain. He eventually returned and was admitted inside.

Austin testified at the hearing that on September 12 they were again discussing the testing he planned to undergo and he felt Rebekka was downplaying the situation. He became angry and stated he wanted to kill her but denied meaning it. Austin described another argument when he tried to leave. Rebekka was trying to hold onto him to keep him from going and then moved between him and the door. She slapped him, and he slapped her back. He blocked two additional blows from her as he moved past her and smashed her toes while he forced the door open. Rebekka then hit him again and slammed his hand shut in the door.[3] Austin claimed he had injuries from this encounter, but he did not submit any pictures or other evidence to support his claims of injury.

Austin agreed there was an altercation with Rebekka's mother when he returned to collect his things, but he says she came running at him while screaming and he pushed her back. He went and found a police officer to help facilitate the situation.

In describing the tension between the couple, Austin also testified that Rebekka previously told him to kill himself and to take a whole bottle of Xanax. Rebekka denied this, describing the event as Austin being angry in the car and her telling him to take some Xanax to calm down. Austin's mother also testified and confirmed that on September 12, she saw Rebekka slap Austin, which Rebekka admitted.

---

[3] At the time of the hearing, Austin had not filed a petition for relief from domestic abuse.

The district court found Austin had committed a domestic abuse assault against Rebekka and he was a credible threat to her physical safety.[4]  Austin timely appealed, and error was properly preserved.

## II.  Standard of Review.

Austin and Rebekka disagree about the standard of review for this case, specifically if what is typically an equity case was actually tried at law.  Our standard of review depends on the district court's mode of trial.  *Knight v. Knight*, 525 N.W.2d 841, 843 (Iowa 1994); *Labs v. Karteus*, No. 13-0777, 2014 WL 250254, at *2 (Iowa Ct. App. Jan. 23, 2014).  Usually, civil domestic abuse cases are heard in equity.  *Reed v. Reed*, No. 13-0170, 2014 WL 69809, at *1 (Iowa Ct. App. Jan. 9, 2014).  To transform the case to one at law, we look to see if objections were ruled on as they were made to the court.  *Bacon ex rel. Bacon v. Bacon*, 567 N.W.2d 414, 417 (Iowa 1997).  At trial, the district court did not rule on any objections and heard all presented evidence.  And, while the court did offer the opportunity for Austin to object to the photographs presented as exhibits, no other objections were made or ruled on.  Therefore, this case was heard in equity, and our review is de novo.  *Knight*, 525 N.W.2d at 843.  We give weight to the district court's findings of fact and credibility, but we consider the whole record anew. *Wilker v. Wilker*, 630 N.W.2d 590, 594 (Iowa 2001).

## III.  Discussion.

Austin argues that the court wrongly found he committed a domestic abuse assault against Rebekka, and so the protection order ought not have been issued.

---

[4] Rebekka also requested financial support as restitution for the money she claimed Austin had taken.  The district court made no finding on this issue.

Specifically, he claims this is a "he said/she said case" where the court should rely on his version of events rather than Rebekka's. Even on her facts, though, he does not believe Rebekka proved the requisite elements of an assault. The district court, by virtue of granting the protective order, found Rebekka to be the more credible source of information about what happened. *See Goldston v. Goldston*, No. 19-0697, 2020 WL 825942, at *2 (Iowa Ct. App. Feb 19, 2020). The record offers evidence supporting the district court's findings. Likewise, considering Austin's admissions, we find further support that an assault occurred.

Iowa Code section 236.5(1) allows a court to issue a protective order upon a finding of domestic abuse. "Domestic abuse" is defined as "committing assault as defined in section 708.1."[5] Iowa Code § 236.2(2). While Iowa Code section 708.1(1) defines assault as a general intent crime, Iowa courts have well established that it requires specific intent. *See, e.g.*, *State v. Heard*, 636 N.W.2d 227, 231–32 (Iowa 2001); *State v. Bedard*, 668 N.W.2d 598, 601 (Iowa 2003) (maintaining that assault under section 708.1(1) and (2) would still require specific intent after the legislature specifically added a Code section dictating it a general intent crime). "Specific intent is present when from the circumstances the offender must have subjectively desired the prohibited result." *State v. Fountain*, 786 N.W.2d 260, 264 (Iowa 2010) (quoting *State v. Redmon*, 244 N.W.2d 792, 797 (Iowa 1976)).

---

[5] There is no question that the parties were married and residing together at the time of the assault, making the assault domestic abuse. *See* Iowa Code § 236.2(2)(a).

Assault can be satisfied by an individual, without justification, acting in a way "which is *intended* to cause pain or injury to, or which is *intended* to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act." Iowa Code § 708.1(2)(a) (emphasis added). We are able to infer intent from the natural consequences of a party's actions. *State v. Taylor*, 689 N.W.2d 116, 132, 136 (Iowa 2004). "[T]he plaintiff must prove the allegation of domestic violence by a preponderance of the evidence." Iowa Code § 236.4(1). More simply, to prove a civil domestic abuse assault, the party need only provide enough evidence to outweigh the evidence presented by the other party. *Benda v. Streif*, No. 20-0805, 2021 WL 2453100, at *2 (Iowa Ct. App. June 16, 2021).

According to Rebekka's version surrounding the events of September 11 and 12, Austin pushed her down on the bed, restrained her upper arms, head-butted her, shoved her into a wall with enough force to knock down a picture and dog gate, pushed her to the ground, and hit her face again. She provided pictures of bruises sustained from the incident. Considering the natural consequences of Austin's actions, we can infer that his intention was to cause pain or injury to Rebekka. These actions also constitute physical contact that would be insulting or offensive to Rebekka.

What is more, Austin made admissions at the hearing that similarly support a finding of assault. He agrees that, while frustrated, he "pressed [his] head against [Rebekka] forcefully" and restrained her arms. As the argument escalated, he also slapped her and shoved her. Even without any pictures of Rebekka's injuries or testimony of her actual injury, pain, or fear, we can still conclude a

reasonable person would find these actions to be at least offensive, if not painful or injurious. As we may infer intent from the natural consequences of Austin's actions, we can presume that any of these acts were also intended to be painful, injurious, or offensive.

**IV. Conclusion.**

Rebekka proved, by a preponderance of the evidence, that Austin committed a domestic abuse assault. The district court was right to issue the protective order on this basis. We affirm.

**AFFIRMED.**