STATE of Iowa, Appellee,

v.

Christopher John NEUZIL, Appellant.

No. 98–112.

Supreme Court of Iowa.

Jan. 21, 1999.

Linda Del Gallo, State Appellate Defender, and Robert P. Ranschau, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, and Barbara A. Edmondson, County Attorney, for appellee.

Considered by LARSON, P.J., and LAVORATO, NEUMAN, SNELL, and CADY, JJ.

NEUMAN, Justice.

The sole question on this appeal is whether defendant, Christopher Neuzil, received ineffective assistance of counsel when his attorney failed to seek an instruction on specific intent during his trial for stalking in violation of a protective order. *See* Iowa Code § 708.11(3)(b)(1) (1997). Because we conclude the crime charged involves general, not specific, intent, we find the court properly instructed the jury and, accordingly, find no merit in defendant's ineffectiveness claim. We therefore affirm the judgment entered on Neuzil's conviction.

The facts are largely undisputed. Following the breakup of his eleven year marriage to Shelly Sheetz, defendant engaged in a disturbing pattern of behavior that led to the issuance of three protective orders covering all but a few days from late February 1996 through May 1997. Pertinent to this appeal, the protective orders prohibited Neuzil from contacting Shelly in person, by writing, or by telephone except for the purpose of discussing issues regarding their three children.

The first protective order was precipitated by events surrounding Shelly's move from the marital home to her parent's farm. Neuzil showed up unexpectedly, whereupon he proceeded to scream and curse at his father-in-law and throw chunks of firewood toward members of the Sheetz family. He

tried to climb into the van with Shelly and the children, hanging on the sides screaming and kicking as Shelly pulled out of the driveway. Finally he rammed his pickup into a vehicle belonging to one of Shelly's friends.

While the protective orders were in effect, Neuzil persisted in a campaign of harassing and threatening actions. Shelly and her parents testified to receiving literally hundreds of phone calls from Neuzil during the early months of 1997. The calls were full of threats and epithets. Neuzil reportedly followed Shelly and her mother; drove straight toward Shelly's father on the roadway, gesturing as if shooting him with a gun; and lurked across the street from Shelly's work place, one day writing "Hi, Shelly, what are you thinking?" in red on the window. He reportedly waved and blew kisses from across the street while Shelly picked up the children from school. Around Mother's Day Neuzil left a rose, cassette tape, and note on Shelly's van. Livestock gates at the Sheetz's farm were found mysteriously left open.

Neuzil's behavior prompted Shelly and her family to implement security measures not previously believed necessary, such as carrying cellular phones, locking doors, and purchasing a new watchdog at the farm. Shelly kept a daily journal to memorialize the phone calls and other contact by Neuzil.

The State charged Neuzil with stalking in violation of a protective order, a class "D" felony, in violation of Iowa Code section 708.11(3)(b)(1). A person commits stalking in violation of this statute when all of the following occur:

    a. The person purposefully engages in a course of conduct directed at a specific person that would cause a reasonable per-

son to fear bodily injury to, or the death of, that specific person or a member of the specific person's immediate family.

    b. The person has knowledge or should have knowledge that the specific person will be placed in reasonable fear of bodily injury to, or the death of, that specific person or a member of the specific person's immediate family by the course of conduct.

    c. The person's course of conduct induces fear in the specific person of bodily injury to, or the death of, the specific person or a member of the specific person's immediate family.

Iowa Code § 708.11(2). Prior to trial, Neuzil's counsel submitted a written request for the uniform instruction on specific intent. See I Iowa Crim. Jury Instructions 200.2 (1988).[1] At the close of evidence, however, the court gave the uniform instruction on general intent. See I Iowa Crim. Jury Instructions 200.1.[2] Defense counsel made no objection.

The jury returned a verdict finding Neuzil guilty as charged. This appeal by Neuzil followed.

## I. Scope of Review/Error Preservation.

■■■ Neuzil claims on appeal that the jury should have been instructed on the issue of specific criminal intent and that trial counsel's failure to pursue such an instruction amounted to ineffective assistance. Although we prefer to address ineffectiveness of counsel claims in postconviction proceedings where counsel has an opportunity to respond, we may resolve them on direct appeal if, as here, "the record is clear and plausible strat-

---

1. The instruction provides:

"Specific intent" means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind.

Because determining the defendant's specific intent requires you to decide what [he] was thinking when an act was done, it is seldom capable of direct proof. Therefore, you should consider the facts and circumstances surrounding the act to determine the defendant's specific intent. You may, but are not required

to, conclude a person intends the natural results of [his] acts.

I Iowa Crim. Jury Instructions 200.2.

2. The general-intent instruction provides:

To commit a crime a person must intend to do an act which is against the law. While it is not necessary that a person knows the act is against the law, it is necessary that the person was aware [he] was doing the act and [he] did it voluntarily, not by mistake or accident. You may, but are not required to, conclude a person intends the natural results of [his] acts.

I Iowa Crim. Jury Instructions 200.1.

egy and tactical considerations do not explain counsel's actions." *State v. Hopkins,* 576 N.W.2d 374, 378 (Iowa 1998). Because defendant alleges denial of a constitutional right, our review is de novo. *Id.* at 377.

■ Counsel's failure to make an adequate record is a recognized exception to our customary error preservation rules. *Earnest v. State,* 508 N.W.2d 630, 632 (Iowa 1993). To prevail on his claim, Neuzil must show his counsel failed to perform an essential duty and prejudice resulted. *State v. McPhillips,* 580 N.W.2d 748, 754 (Iowa 1998). We address the merits of the issue counsel allegedly failed to raise, mindful that an ineffectiveness claim cannot be sustained on failure to urge an issue having no merit. *Id.*

## II. Intent Element of Iowa's Stalking Statute.

■ Neuzil is on solid ground in asserting the State must prove all the essential elements of the crime charged, and that the court must clearly communicate those essential elements to the jury. *See State v. Burns,* 181 Iowa 1098, 1101–02, 165 N.W. 346, 348 (1917); *State v. Hoffer,* 383 N.W.2d 543, 548 (Iowa 1986). The question is whether the court erred when it classified stalking as a general-intent crime and instructed the jury accordingly. We are persuaded the court committed no error.

■ Neuzil correctly argues that the term "specific intent" designates "a special mental element which is required above and beyond any mental state required with respect to the actus reus of the crime." *State v. Buchanan,* 549 N.W.2d 291, 294 (Iowa 1996); *Eggman v. Scurr,* 311 N.W.2d 77, 79 (Iowa 1981). He also concedes that the determination of whether a statute requires general or specific intent turns on the language of the act, read in the light of its manifest purpose and design. *See Buchanan,* 549 N.W.2d at 294. "When a statute is plain and its meaning clear, courts are not permitted to search for meaning beyond its express terms." *State v. Chang,* 587 N.W.2d 459, 461 (Iowa 1998).

■ Neuzil claims section 708.11 requires the State to prove a course of conduct "done with the specific intent to induce fear in another." He misreads the statute. By its terms, the crime of stalking merely requires proof of purposeful conduct directed at a specific person that would cause *a reasonable person* to fear injury to that specific person or members of her family. *See* Iowa Code § 708.11(2)(a). The statute's focus is not on the defendant's mental state but on the result defendant's purposeful acts cause in a reasonable person. *Cf. Chang,* 587 N.W.2d at 460 (interpreting statutory words "damage ... done intentionally" as requiring State to establish that defendant intended to cause the damage).

■ We agree with the State's contention that if the Iowa legislature intended to make stalking a specific-intent crime, it would have defined the offense as a course of conduct "intended to place" the victim in reasonable fear of bodily injury or death. *See Buchanan,* 549 N.W.2d at 294. In the absence of such express terminology, we presume the legislature intended to criminalize the proscribed act itself, without further proof related to the defendants subjective desires. *Id.*

We believe our interpretation of the plain language of section 708.11 is in keeping with evident legislative intent. Iowa's stalking statute incorporates the language recommended by the National Institute of Justice in its model code on stalking. *See* National Institute of Justice, *Project to Develop a Model Anti–Stalking Code for States* 43–48 (1993) [hereinafter N.I.J.]. Commentators have interpreted the model code to contain a general-intent provision. *See* Christine B. Gregson, Comment, *California's Antistalking Statute: The Pivotal Role of Intent,* 28 Golden Gate U.L.Rev. 221, 244–45 (1998) [hereinafter Gregson]; N.I.J., at 47–48. As already noted, the statute as written simply requires the stalker to purposefully engage in a course of conduct that would cause a reasonable person to fear bodily injury or death in another. The statute makes no mention of proof that the stalker actually *intended* to cause fear in the victim, but rather that the stalker consciously *engaged in conduct* that he knew or should have known would cause his victim to be afraid.

Gregson, 28 Golden Gate U.L.Rev. at 244–45 & n. 153; N.I.J., at 47–48.

The legislative choice of general over specific intent reflects sound public policy. The reason underlying the choice has been summed up this way:

Stalkers may suffer from a mental disorder that causes them to believe that their victim will begin to return their feelings of love or affection if properly pursued. If this is the case, the stalker's intent may *not be to cause the victim to be afraid,* but to establish a relationship with or express his feelings to the victim. The drafters of the Model Code believed that the stalker's *behavior,* rather than his *motivation,* should be the most significant factor in determining whether to press charges. The Model Code's general intent requirement holds the accused stalker responsible for his intentional behavior if, at the very least, he should have known that his actions would cause the victim to be afraid. A stalker should know that his actions are unappreciated if he was served with a court order or if he was told by the victim that she no longer wishes to be contacted. By placing the focus on the stalker's behavior, the Model Code effectively eliminates the possibility that a stalker could assert a successful defense by claiming that he did not intend to cause the victim to be afraid, but was instead expressing his feelings and opinions.

Gregson, 28 Golden Gate U.L.Rev. at 244–45 (footnotes omitted) (emphasis added); *see* N.I.J., at 48; Brian L. McMahon, Comment, *Constitutional Law—Unreasonable Ambiguity: Minnesota's Amended Stalking Statute is Unconstitutionally Vague,* 24 Wm. Mitchell L.Rev. 189, 204 (1998) (arguing greater difficulty in meeting specific-intent element in stalking statute where stalker merely sends flowers or notes professing love or devotion or where stalker attributes behavior to that of loving husband trying to save marriage or maintain contact with children).

Reading a specific-intent requirement into the statute would allow an accused stalker to avoid conviction by asserting an emotional inability to form the requisite specific intent. Here, for example, Neuzil sought to convince the jury that his conduct stemmed from his love for Sheetz, and the hundreds of phone calls placed to her home were either the product of his depression or attempts to contact his children. To excuse his harassing conduct on these grounds would effectively negate the purpose of the anti-stalking statute—to enable law enforcement to get involved in a harassing situation before physical confrontation results. *See* Gregson, 28 Golden Gate U.L.Rev. at 229, 239.

We thus hold that the crime of stalking, section 708.11, is a general-intent crime. The court committed no error in submitting a jury instruction on general intent. Accordingly we find no merit in Neuzil's argument that his trial counsel was ineffective for failing to pursue a jury instruction on the issue of specific intent. We affirm the judgment of the district court.

**AFFIRMED.**