STATE of Iowa, Appellee,

v.

James Edward HEARD, Appellant.

No. 00–0106.

Supreme Court of Iowa.

Oct. 10, 2001.

Rehearing Denied Dec. 5, 2001.

Brett A. Nelson and William E. Blais of Nelson, Keys & Keys, P.C., Rock Island, IL, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, William E. Davis, County Attorney, and Jerald L. Feuerbach, Assistant County Attorney, for appellee.

LAVORATO, Chief Justice.

The defendant, James Edward Heard, appealed his conviction of robbery in the second degree entered by the district court in a bench trial. He contended there was insufficient evidence for the conviction under the assault and the immediate-serious-injury alternatives in Iowa Code section 711.1 (1997). We transferred the case to the court of appeals, which reversed. We granted the State further review. Because we find there was sufficient evidence to convict under the assault alternative, we vacate the court of appeals decision and affirm the district court judgment.

## I. Background Facts and Proceedings.

The facts in this case are largely undisputed. In the early morning hours of May 29, 1999, Aimee Hahn was working alone at a Coastal Mart store in Davenport, Iowa. Coastal Mart is a gas station and convenience store.

At approximately 4:20 a.m., a movement outside caught Hahn's attention. Due to remodeling, plastic was hanging in front of the store. Through the small space of window that remained, Hahn saw a person who then entered the store. The person— later identified as Heard—walked in wearing a paper bag over his head with eye-hole cutouts, large, heavy athletic or safety-type glasses, and white athletic socks over his hands.

As Heard entered the store, he said "Happy Halloween" or "trick or treat." Hahn testified she could not recall which of the two phrases Heard actually used. Heard approached the counter behind which Hahn was standing and told her in a soft-spoken voice to "give him the money." Hahn asked Heard to repeat what he had said because she could not hear him. After Heard repeated his demand, Hahn gave him all of the money—approximately $110—from the cash register. Hahn could not recall whether she handed Heard the money or put it on the counter in front of him. Heard took the money.

Heard then told Hahn to remove money from underneath the cash register drawer. Hahn complied and gave Heard some additional money. When Heard asked if there was any more money in the store, Hahn lied and told him no.

Heard told Hahn to lie down on the floor, which she did. When she thought Heard was gone, Hahn grabbed the telephone, dialed 911 from her position on the floor, and reported the incident to the police. Hahn estimated the whole incident lasted less than one minute. Hahn testified that Heard made no physical movement toward her and made no express verbal threats of harm.

A short time later, the police stopped the pickup truck Heard was driving. The police brought Hahn to the scene, and she identified Heard. Following Heard's arrest, the State charged him with second-degree robbery and first-degree theft. *See* Iowa Code §§ 711.1, .3, 714.1, .2(1) (1997).

Before trial, the State dismissed the first-degree theft charge. The parties

tried the case to the district court. The court found Heard guilty of second-degree robbery. In reaching its verdict, the court found that Heard entered the Coastal Mart store with the intention to commit theft. The court further found that

in carrying out his intention to commit a theft or to assist him in escaping from the scene after commission of the theft, the defendant did commit an assault on Aimee Hahn. Specifically, the defendant committed acts intended to place the clerk in fear of immediate physical contact which would be painful, injurious, insulting, or offensive.

The court found in the alternative that Heard had created "circumstances which would put Aimee Hahn in fear of immediate serious injury."

Heard filed a motion for new trial. He contended the evidence did not support a robbery conviction because his actions did not constitute an assault, and he did not put Hahn in fear of or threaten her with immediate serious injury. The court denied Heard's motion and sentenced him to an indeterminate term of ten years in prison.

Heard appealed, and we transferred the case to the court of appeals. The court of appeals reversed, finding that substantial evidence did not support the robbery conviction based on either assault or threat or fear of immediate serious injury.

We granted the State's application for further review.

## II.  Issues.

Heard raises several issues in his appeal. However, his basic contention is that there is insufficient evidence to sustain his robbery conviction on the basis of assault or on the alternative basis of a threat or fear of immediate serious injury. Because we find sufficient evidence to sustain the conviction on the basis of assault, we limit our discussion to that issue.

## III.  Scope of Review.

■ We review challenges to the sufficiency of the evidence supporting a guilty verdict for correction of legal error. *State v. Mitchell,* 568 N.W.2d 493, 502 (Iowa 1997). We will uphold a verdict if substantial record evidence supports it. *Id.* "Evidence is substantial if it would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." *Id.*

■ "[W]e view the evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the" evidence in the record. *Id.* We consider all of the evidence in the record—not just the evidence that supports the verdict. *Id.*

■ Additionally, to the extent the appeal involves issues of statutory interpretation, a question of law, our review is for correction of legal error. *State v. Knowles,* 602 N.W.2d 800, 801 (Iowa 1999).

## IV.  Sufficiency of the Evidence to Sustain Robbery Conviction on Basis of Assault.

Iowa Code section 711.1 provides:

A person commits a robbery when, having the intent to commit a theft, the person does any of the following acts to assist or further the commission of the intended theft or the person's escape from the scene thereof with or without the stolen property:

1.  Commits an assault upon another.

2.  Threatens another with or purposely puts another in fear of immediate serious injury.

3.  Threatens to commit immediately any forcible felony.

It is immaterial to the question of guilt or innocence of robbery that the property was or was not actually stolen. Iowa Code § 711.1. As mentioned, the district court found Heard guilty under the first and second robbery alternatives.

In finding Heard guilty of robbery under the assault alternative, the district court explained:

[T]he defendant committed acts intended to place the clerk in fear of immediate physical contact which would be painful, injurious, insulting, or offensive. At shortly after 4:00 a.m. the defendant placed a bag made into a mask over his head, slipped white athletic socks over his hands, walked past partially obscured windows and into a convenience store where a sole clerk was working. Although he spoke in a soft voice and did not touch the clerk, he asked for the money in the cash drawer and then told the clerk to lie on the floor. Assault requires some overt act supplementing a threat. This defendant's use of a bag over his head and socks over his hands signaled his intention to commit some unauthorized act, placing the clerk in fear that she would be harmed, injured or offended in some fashion if she failed to comply with his instructions to give him the money. A reasonable person in the shoes of this clerk would have expected to experience harm at the hands of the defendant under the existing facts and circumstances the defendant had created by dressing in this fashion. Even if the clerk were not afraid of the defendant, the assault element of a robbery charge is supported by evidence from which it could be inferred that the defendant's alteration of his appearance and taking of property was not desired by the clerk and was therefore offensive to her. The defendant put the mask over his head and the socks on his hands

to provide a non-verbal form of intimidation or threat so that the clerk would be placed in fear and comply with his demand for the money.

Heard contends that the district court erred in concluding that assault could be premised on an act that occurred outside the clerk's presence and perception, *i.e.*, the physical act of placing the bag over his head and the socks on his hands. He additionally argues his mere disguised appearance could not give rise to an assault.

In explaining the basis for its finding, the district court was clearly relying on the following definition of assault:

Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

Iowa Code § 708.1(2).

■ We follow the definition of assault in Iowa Code section 708.1 when applying the assault alternative of robbery under Iowa Code section 711.1(1). *State v. Ceaser*, 585 N.W.2d 192, 194 (Iowa 1998). Assault requires an overt act. *State v. Smith*, 309 N.W.2d 454, 457 (Iowa 1981).

■ **A. Whether acts occurring outside the presence and perception of the alleged victim can give rise to an assault.** Heard contends the district court "erroneously found that an assault had been committed [on Hahn] by means of a *covert*, not *overt*, act from which no physical contact could reasonably be expected." The State counters that in the context of robbery, "the court may examine the circumstances surrounding the demand for the property to determine whether the facts support a reasonable inference that the person implicitly threatened the immediate use of physical force if the victim did not comply with his demands." In short, the State asserts that whether an assault

occurred should be determined from the totality of the circumstances, not just from a single act.

The district court did not limit its finding of assault to Heard's mere act of placing the paper bag over his head and the socks on his hands. Rather, the court found that Heard's

> *use* of a bag over his head and socks over his hands signaled his intention to commit some unauthorized act, placing the clerk in fear that she would be harmed, injured or offended in some fashion if she failed to comply with his instructions to give him the money.

(Emphasis added.)

We agree with the district court that the overt act in this case is not necessarily limited to the act of putting on the paper bag and socks. Heard's first argument lacks merit.

**B. Whether the disguised appearance could give rise to an assault.** Heard's next argument is that his disguised appearance could not give rise to an assault. This argument also implicates the principle that an assault requires an overt act. The argument proceeds on the premise that the assault alternative in section 708.1(2) requires some physical act, bodily movement, activity, or threatening gesture under circumstances in which physical contact is possible. Heard asserts that merely wearing a paper bag and socks would not constitute such action.

The State contends the "overt act" required for an assault should not be limited to some type of physical action or movement on the part of the person committing the assault. Rather, the fact finder should consider the totality of the evidence bearing on that person's actions, both verbal and nonverbal, in determining whether an assault occurred.

We have not previously defined overt act in the context of the assault alternative in section 708.1(2). Overt act has been defined as

> [a]n open, manifest act from which criminality may be implied. An outward act done in pursuance and manifestation of an intent or design.

Black's Law Dictionary 1104–05 (6th ed.1990); *see also Chavez v. United States*, 275 F.2d 813, 817 (9th Cir.1960) ("In criminal law an overt act is an outward act done in pursuance of the crime and in manifestation of an intent or design, looking toward the accomplishment of the crime.").

■ Although in the past we have defined the assault alternative in section 708.1(2) as a general intent crime, *see State v. Ogan*, 497 N.W.2d 902, 903 (Iowa 1993), we now hold this alternative is a specific-intent crime. We overrule *Ogan* and those cases that hold otherwise.

In *Eggman v. Scurr*, we distinguished between general criminal intent and specific intent:

> When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a further consequence, we ask whether the defendant intended to do the prescribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.

311 N.W.2d 77, 79 (Iowa 1981) (quoting P. Johnson, *Criminal Law*, 329 (1975)).

■ The section 708.1(2) definition of assault applicable here requires an act "intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the

act." This definition clearly requires an intent to achieve some additional consequence so as to qualify as a specific-intent crime under the *Eggman* definition.

We turn to the facts in this case. Heard came into the store in the early morning hours dressed in a manner that disguised his identity. He does not deny that his purpose in coming into the store was to *obtain* money. He demanded money while he was in close proximity to Hahn, who was alone. He took the money, told her to lie down, and then left.

Returning to the definition of overt act, we think these actions are certainly "open, manifest act[s] from which criminality may be implied" and "outward acts done in pursuance and manifestation of an intent or design." From the totality of these facts, a fact finder could reasonably infer that by his actions—both verbal and non-verbal—Heard intended to place Hahn in fear of immediate physical contact that would be painful, injurious, or offensive if Hahn did not comply with his demand of money. *See State v. Quick*, 199 S.C. 256, 258, 19 S.E.2d 101, 102 (1942) (holding that the existence of an overt act must be considered in light of the circumstances in which the act is taken and the inferences the fact finder may reasonably draw from those circumstances); *see also* Wharton's Criminal Law § 182, at 427 (15th ed. 1994) ("If a defendant states that he will inflict an injury unless the victim complies with a certain condition, which defendant has no right to impose, an assault is committed whether or not the victim complies with the condition.").

We conclude there was sufficient evidence to support Heard's conviction for robbery under the assault alternative in section 711.1(1).

## V. Disposition.

Because we conclude there was sufficient evidence to support Heard's convic-

tion for robbery under the assault alternative, we vacate the court of appeals decision and affirm the district court judgment.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except NEUMAN and LARSON, JJ., who concur specially.

NEUMAN, Justice (concurring specially).

I concur in the majority's affirmance of James Heard's robbery conviction. I write specially because I am convinced it is unnecessary and unwise to overrule settled case law to do so.

The record amply supports the trial court's finding that Heard assaulted the sales clerk to further his intended theft of cash from the store's cash register. The question is whether the assault alternative on which the State relies for the robbery conviction, Iowa Code section 708.1(2), necessarily requires the State to prove more than Heard's general criminal intent to commit the assault. The majority insists it must because, by definition, an assault is an act "intended" to place another in fear of immediate contact, coupled with the apparent ability to execute the act. *See* Iowa Code § 708.1(2). In my view, the legislature's use of the word "intended" does no more than state the obvious: to be considered criminal, the offensive act must be intentional, not accidental. *Bacon v. Bacon*, 567 N.W.2d 414, 417 (Iowa 1997).

This court has long held that general intent is distinguished from specific intent by whether or not the definition of the proscribed act requires proof of defendant's intent to do some *further* act or achieve some *additional* consequence.

*Eggman v. Scurr,* 311 N.W.2d 77, 79 (Iowa 1981). Put another way,

> [s]pecific intent is present when from the circumstances the offender must have subjectively desired the prohibited result. General intent exists when from the circumstances the prohibited result may reasonably be expected to follow from the offender's voluntary act, irrespective of any subjective desire to have accomplished such result.

*Id.* at 80 (quoting *State v. Redmon,* 244 N.W.2d 792, 797 (Iowa 1976)); *accord Bacon,* 567 N.W.2d at 417. Applying this rule, the court in *Redmon* observed that "[t]he difference between an assault and an assault with intent to inflict great bodily injury is the specific intent to inflict an aggravated injury." *Redmon,* 244 N.W.2d at 797. In *Bacon,* a domestic abuse case, we explained that assault defined by section 708.1 is a general-intent crime because

> [i]f the prohibited result may reasonably follow from the offender's act, the offender is guilty of assault regardless of whether or not the offender subjectively desired the prohibited result. The offender need only be aware that he or she was doing the act. In addition, the offender must have done the act voluntarily, not by mistake or accident. In determining general intent, the fact finder may, but is not required, to conclude that the offender intends the natural results of his or her acts.

*Bacon,* 567 N.W.2d at 417; *accord State v. Ogan,* 497 N.W.2d 902, 903 (Iowa 1993).

Here the assault on the clerk was of the simple variety, not aggravated. Yet the majority now concludes that the definition of simple assault found at section 708.1(2) meets the "intent to achieve some additional consequence" test of *Eggman.* I strongly disagree. No additional or further consequence is contemplated by the definition of simple assault beyond the offensive act itself. Without naming what additional consequence section 708.1(2) allegedly requires "to qualify as a specific-intent crime," the majority merely says it is so and overrules all cases holding to the contrary.

The consequences of the majority's action are not insignificant. If assault under section 708.1(2) now requires proof of a specific intent to place another in fear of offensive physical contact, several assault offenses will require proof of *two* different specific intent elements. *See, e.g.,* Iowa Code §§ 708.2(1) (assault with intent to inflict serious injury), 708.3 (assault while participating in a felony), 708.3A(1) (assault on various officers and officials), 709.11 (assault with intent to commit sexual abuse). More troublesome perhaps is the decision's effect on lesser-included offenses, already a source of confusion. If assault is a special-intent crime, it appears that the uniform instruction making it a lesser-included offense of the general-intent crimes of murder and sexual assault may be rendered obsolete. If that is not the case, will the defenses of intoxication or diminished capacity apply to the lesser offense but not the greater? *Cf. State v. Artzer,* 609 N.W.2d 526, 531 (Iowa 2000) (defenses of intoxication and diminished capacity not available to defendant charged with second-degree murder).

Even more problematic is the impact of the majority's decision on the prosecution of crimes routinely involving alcohol, such as bar fights and, more importantly, domestic violence. Statewide, such convictions numbered in excess of 8000 for fiscal year 2001. As already noted, the defenses of intoxication and diminished responsibility are not available to a defendant charged with a general-intent crime because the defenses are pertinent only to the specific-intent elements of a crime. *Id.* If simple assault is a specific-intent crime, those de-

fenses will be available. Given the cost and trouble of hiring experts to counter those defenses, however, it is evident that today's decision will effectively eliminate the prosecution of assaults arising in the context of bar fights.

Of greater concern, permitting voluntary intoxication and diminished responsibility to be raised as defenses to domestic abuse assault will substantially undermine the protective purpose of our domestic abuse statutes, thereby contravening clear legislative intent. *Cf. State v. Neuzil,* 589 N.W.2d 708, 711 (Iowa 1999) (classification of stalking as general-intent crime requires proof of purposeful conduct but avoids substantial hurdle of proving defendant's subjective intent, thereby permitting state intervention before harassment escalates to physical confrontation).

In short, I am convinced the court's turnabout on the question of the intent required to prove assault is unnecessary in the context of this case and unsound from the standpoint of public policy. A legislative rewrite of the assault statute might remedy the problem in the long run,[1] but confusion will reign in the meantime. Given the record before us, I see no reason to subject the bench, the bar and the public to that upheaval.

LARSON, J., joins this special concurrence.

---

1. For example, Iowa Code section 708.11(2)(a), the stalking statute, proscribes "purposefully engag[ing] in a course of conduct" that would cause a reasonable person to fear bodily injury, rather than using the "intended to place another in fear" language found in the assault statute, section 708.1(2). *See Neuzil,* 589 N.W.2d at 711 (proof of intent focuses on subjective motive whereas proof that a party engaged in proscribed conduct focuses solely on objective behavior).