# IN THE COURT OF APPEALS OF IOWA

No. 3-1061 / 13-0347
Filed February 19, 2014

**STATE OF IOWA,**
    Plaintiff-Appellant,

**vs.**

**TRAVIS HOWARD RICHARD BECK,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Muscatine County, Thomas G. Reidel, Judge.

The State appeals from the district court's ruling on its motion to adjudicate law points.  **AFFIRMED.**

Thomas J. Miller, Attorney General, Tyler J. Buller and Kevin Cmelik, Assistant Attorneys General, Alan Ostergren, County Attorney, and Korie Shippee, Assistant County Attorney, for appellant.

Mark C. Smith, State Appellate Defender, for appellee.

Heard by Vogel, P.J., and Mullins and McDonald, JJ.

**McDONALD, J.**

This case presents the deceptively simple question of whether a criminal defendant charged with assault may assert the defense of diminished responsibility. In ruling on the State's motion to adjudicate law points, the district court concluded the defendant could assert the defense. The supreme court granted the State's application for discretionary review of the district court's ruling, stayed further proceedings in the district court, and transferred the matter to this court.

I.

This appeal involves three separate criminal proceedings involving the same defendant. In October 2011, Travis Beck was charged with attempted murder and willful injury, both charges arising out of an incident in which he allegedly stabbed his girlfriend's brother four times. In July 2012, the State charged Beck with willful injury arising out of an incident in which he allegedly stabbed his girlfriend in the chest. The State filed an amended trial information in each case in January 2013, charging Beck in each case with one count of assault causing serious injury, in violation of Iowa Code section 708.2(4) (2011). The third case arises out of events occurring on May 5, 2012—when Beck allegedly beat his girlfriend with a skateboard—and May 9, 2012—when Beck allegedly punched his girlfriend in the forehead. For the conduct occurring in May 2012, the State charged Beck with two counts of domestic abuse assault, third offense, in violation of Iowa Code section 708.2A(2).

In June 2012, Beck sought leave from the district court to obtain a mental health evaluation for the purpose of exploring mental health defenses. The

district court granted the request, and Beck was examined by his expert and the State's expert. Beck's expert and the State's expert each concluded that Beck "displays characteristics [that] would support a defense of diminished responsibility." In September 2012, Beck provided notice of his intent to rely on the defenses of self-defense and diminished capacity. The State subsequently filed its motion to adjudicate law points, asking, "Is diminished responsibility a defense available to a defendant charged with assault?" The court held the defense was available.

## II.

We review "a trial court's ruling on a motion to adjudicate law points for correction of legal error. The appropriateness of the district court's action turns on the correctness of its interpretation of the relevant statutes, which are reviewable for correction of errors at law as well." *State v. Muhlenbruch,* 728 N.W.2d 212, 214 (Iowa 2007) (internal citation omitted); *see State v. Tong*, 805 N.W.2d 599, 601 (Iowa 2011); Iowa R. App. P. 6.907.

## III.

## A.

We first discuss the defense of diminished responsibility. Iowa Rule of Criminal Procedure 2.11(11)(b) provides, "If a defendant intends to rely upon the defense of insanity or diminished responsibility at the time of the alleged crime, the defendant shall, within the time provided for the filing of pretrial motions, file written notice of such intention." The diminished responsibility defense is not codified. The legislature has thus not explicitly delineated the parameters of the defense. *Cf.* Iowa Code § 701.4 (codifying defense of insanity); Iowa Code

§ 701.5 (codifying defense of intoxication); Iowa Code § 701.6 (codifying defense of ignorance or mistake). Although not codified, the defense has long been recognized at common law. *See State v. Gramenz*, 126 N.W.2d 285, 288 (1964).

"The common law defense of diminished responsibility permits proof of defendant's mental condition on the issue of defendant's capacity to form a specific intent in those instances in which the State must prove defendant's specific intent as an element of the crime charged." *Lamasters v. State*, 821 N.W.2d 856, 869 (Iowa 2012). The defense "allows a defendant to negate the specific intent element of a crime by demonstrating due to some mental defect she did not have the capacity to form that specific intent." *Anfinson v. State*, 758 N.W.2d 496, 502 (Iowa 2008). "Specific intent is present when from the circumstances the offender must have subjectively desired the prohibited result." *State v. Redmon*, 244 N.W.2d 792, 797 (Iowa 1976). In addition, "[w]hen the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent." *State v. Heard*, 636 N.W.2d 227, 231 (Iowa 2001).

The common law limitations of the defense are well established. "Evidence of diminished responsibility may not . . . negate general criminal intent, and is therefore not a defense to crimes which do not require proof of specific intent." *Anfinson*, 758 N.W.2d at 502. "General intent exists when from the circumstances the prohibited result may reasonably be expected to follow from the offender's voluntary act, irrespective of any subjective desire to have accomplished such result." *Redmon*, 244 N.W.2d at 797. Our supreme court

reached the conclusion that diminished responsibility is not a defense to those crimes not requiring proof of specific intent after the court compared the defense of diminished responsibility to the defense of insanity. *See State v. McVey*, 376 N.W.2d 585, 587 (Iowa 1985). The court explained that mens rea, insanity, and diminished responsibility are legal concepts without medical counterparts. *Id.* "As legal concepts they are used to establish limits to legal culpability. The extent to which evidence of mental impairment will be permitted to affect criminal responsibility is therefore a legal question." *Id.* The codification of the insanity defense and failure to codify the diminished responsibility defense evidenced legislative intent, the supreme court reasoned, to limit the assertion of the defense of diminished responsibility only to those crimes requiring proof of specific intent:

> In view of the fact the Iowa common law recognized mental impairment other than legal insanity as a defense only to specific intent crimes at the time the insanity defense was codified, we believe the General Assembly drew the line at that point. The legislature thus established the applicable legal standard for deciding culpability upon evidence of mental impairment in cases requiring proof only of guilty knowledge or general criminal intent accompanying a prohibited act. The mens rea of those crimes is not affected by evidence of mental impairment that does not meet the insanity standard. Therefore we hold that the diminished responsibility defense is available only to specific intent crimes.

*McVey*, 376 N.W.2d at 588. With these principles in mind, we turn to the offense of assault.

### B.

Under the common law, Iowa courts defined assault as "an attempt to apply unlawful physical force to the person of another, coupled with the apparent present ability to execute the [act]." *State v. Straub*, 180 N.W. 869, 869 (1921).

At common law, assault was considered a general intent crime. *See Redmon*, 244 N.W.2d at 797.

In 1976, the legislature codified the assault statute in substantially its current form. *See* 1976 Iowa Acts ch. 1245(1), § 801 (codified at Iowa Code § 708.1 (1979)). The 1976 act defined assault, as relevant here, as conduct done with the intent to cause pain or injury to another, or conduct intended to result in physical contact which will be insulting or offensive to another, or conduct intended to place another in fear of immediate physical contact which is insulting or offensive to another. *See* Iowa Code § 708.1(1) and (2) (1979). The statutory language made it unclear whether assault was a specific intent crime or a general intent crime. *See State v. Brown*, 376 N.W.2d 910, 913 (Iowa Ct. App. 1985) ("However, in analyzing the general assault provision, the distinction is not as clear; the difficulty stems from the fact that the intent element is not easily separated from the act necessary to commit an assault. Because of this, assault conceivably meets the definition of a specific intent as well as a general intent crime."). Our courts initially concluded that assault did not contain a specific intent element:

> We find it significant that both common law definitions of assault refer to an intent not unlike that referred to in the statutory definition of assault. While the statute is certainly more specific in this regard, we would be hard pressed to characterize it as a change in the law; rather, it would appear to be merely a codification of the common law intent element, which has been characterized as a general intent to injure. Absent some clear indication on the part of the legislature to change prior law, we are bound by the *Redmon* decision.

*Brown*, 376 N.W.2d at 914; *see State v. Ogan*, 497 N.W.2d 902, 903 (Iowa 1993), *overruled by Heard*, 636 N.W.2d at 231. Because the offense of assault

did not require proof of specific intent, diminished responsibility was not a defense to assault. *See Anfinson*, 496 N.W.2d at 502; *Redmon*, 244 N.W.2d at 797.

In 2001, in *State v. Heard*, our supreme court reversed course and held assault required proof of specific intent. *Heard*, 636 N.W.2d at 231-32. The assault alternative at issue in *Heard* defined assault as an act "intended to place another in fear of immediate physical contact which will be painful, injurious, insulting or offensive, coupled with the apparent ability to execute the act." *Id.* (quoting Iowa Code section 708.1(2)). The *Heard* court reasoned the "definition clearly requires an intent to achieve some additional consequence so as to qualify as a specific-intent crime." *Id.* at 232.

Four months after *Heard*, the legislature amended the assault statute, adding a prefatory sentence at the beginning of the section: "An assault as defined in this section is a general intent crime." 2002 Iowa Acts ch. 1094, § 1 (codified at Iowa Code § 708.1 (2003)). The statute under which Beck was charged reads as follows:

> An assault as defined in this section is a general intent crime. A person commits an assault when, without justification, the person does any of the following:
> 1. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.
> 2. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.
> 3. Intentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another.

Iowa Code § 708.1 (2011).

We now turn our attention to the question of what bearing the 2002 amendment and subsequent cases have on a defendant's ability to rely on the defense of diminished responsibility when charged with assault.

C.

We begin our analysis with the language the legislature used. *See McGill v. Fish*, 790 N.W.2d 113, 118 (Iowa 2010) (explaining that when courts resolve issues of statutory interpretation, "the statute in dispute is our starting point"). "When we interpret a criminal statute, our goal 'is to ascertain legislative intent in order, if possible, to give it effect.'" *State v. Finders*, 743 N.W.2d 546, 548 (Iowa 2008) (quoting *State v. Conley*, 222 N.W.2d 501, 502 (Iowa 1974)). We will not look beyond a statute's express terms when its language is clear. *Id.*

> We give words their ordinary and common meaning by considering the context within which they are used, absent a statutory definition or an established meaning in the law. We also consider the legislative history of a statute, including prior enactments, when ascertaining legislative intent. When we interpret a statute, we assess the statute in its entirety, not just isolated words or phrases. We may not extend, enlarge, or otherwise change the meaning of a statute under the guise of construction.

*State v. Romer*, 832 N.W.2d 169, 176 (Iowa 2013) (citation omitted).

The ordinary and common meaning of the sentence "[a]n assault as defined in this section is a general intent crime" seems readily apparent: assault as defined in Iowa Code section 708.1 does not contain a specific intent element. The text of the statute thus evidences the legislature's intent to restore the prior statutory construction that assault required the State to prove only general intent and not specific intent in proving assault, as expressed in *Ogan*, *Brown*, and Justice Neuman's special concurrence in *Heard*.

Legislative history supports this interpretation of the statute. The 2002 amendment was a direct response to the *Heard* decision. *See* H.F. 2546 Explanation, 79th Gen. Assemb., Reg. Sess. (Iowa 2001). We therefore discuss *Heard* in more detail to determine exactly what the legislature was attempting to correct. Heard was convicted of robbery, with assault as one of the alternatives. *See Heard*, 636 N.W.2d at 229. The issue on appeal was the sufficiency of the evidence supporting the conviction. *See id.* In analyzing the defendant's claim, the court stated the definition of assault contained in Iowa Code section 708.1 required an action done with the "intent to achieve some additional consequence so as to qualify as a specific-intent crime." *Id.* at 232. Justice Neuman, joined by Justice Larson, concurred separately because she was "convinced it is unnecessary and unwise to overrule settled case law." *Id.* (Neuman, J., concurring specially). Justice Neuman took issue with the *Heard* majority's conclusion the word "intended" in the assault statute required proof of more than the general criminal intent to commit the assault:

> Here the assault on the clerk was of the simple variety, not aggravated. Yet the majority now concludes that the definition of simple assault found at section 708.1(2) meets the "intent to achieve some additional consequence" test of *Eggman* [*v. Scurr*, 311 N.W.2d 77, 79 (Iowa 1981)]. I strongly disagree. No additional or further consequence is contemplated by the definition of simple assault beyond the offensive act itself. Without naming what additional consequence section 708.1(2) allegedly requires "to qualify as a specific-intent crime," the majority merely says it is so and overrules all cases holding to the contrary.

*Id.* at 233. The temporal proximity of the amendment to *Heard*, standing alone, indicates the amendment was intended to abrogate *Heard* and restore the prior construction of the assault statute as expressed in *Brown*, *Ogan*, and Justice

Neuman's special concurrence in *Heard*. In addition, the explanation accompanying the house file specifically discusses the *Heard* decision and states the legislative intent is to treat assault as a general intent crime. *See* H.F. 2546 Explanation.

Given the foregoing, it appears the amendment was intended to abrogate *Heard* and to instruct the courts to interpret the assault statute in such a way as to not require proof of specific intent. However, the 2002 amendment has acquired the patina of judicial construction that must be considered.

Our courts have construed the 2002 amendment on several occasions. In *State v. Bedard*, 668 N.W.2d 598, 600-01 (Iowa 2003), the court concluded that the 2002 amendment did not alter the substantive elements of the first two alternatives of assault and that those two alternatives still required proof of specific intent:

> In order for there to be a criminal assault, it must be shown that the act was either "intended to cause pain or injury to, or . . . intended to result in physical contact which will be insulting or offensive to another," or "intended to place another in fear of immediate physical contact, which will be painful, injurious, insulting, or offensive." Iowa Code § 708.1(1), (2). These elements of proof have caused us to describe the basic assault offense, either standing alone, or as the predicate for a more serious felonious assault, as a specific-intent crime. *State v. Heard*, 636 N.W.2d 227, 231 (Iowa 2001).
> A 2002 amendment to section 708.1, enacted as 2000 Iowa Acts chapter 1094, section 1, introduces the statutory definition of assault with a statement that "[a]n assault as defined in this section is a general intent crime." However, this amendment did not alter the substantive content of the statute as it pertains to the elements of the crime. The intent elements discussed in *Heard* remain as part of the definition of the offense and continue to be matters that the State must prove by evidence beyond a reasonable doubt.

Three years later, in *State v. Keeton*, 710 N.W.2d 531, 531 (Iowa 2006), the court considered whether there was sufficient evidence to support the assault element of the defendant's conviction for second-degree robbery. The State argued that the first two alternatives of the assault statute only required proof of general intent. *See Keeton*, 710 N.W.2d at 533. The court declined "to revisit the issue of whether assault is a general- or specific-intent crime." *Id.* at 534. The court concluded that "[r]egardless of which label is attached to the offense, the State was still required to prove [the defendant] possessed the mens rea required by the statute." *Id.* In *Wyatt v. Iowa Department of Human Services*, 744 N.W.2d 89, 94 (Iowa 2008), the court again revisited the issue. The court summarized the law post-*Bedard*: "notwithstanding the new [introductory] language, specific intent, as outlined in *Heard*, remained a required element of assault." *Wyatt*, 744 N.W.2d at 94. This was true without regard to the label— specific intent or general intent—applied to the statute. *See id.*

Most recently, in *Fountain*, the defendant was convicted of domestic abuse assault causing bodily injury under the first mode in the assault statute. *See State v. Fountain*, 786 N.W.2d 260, 262 (Iowa 2010). In his claim for postconviction relief, Fountain asserted trial counsel was ineffective in not requesting a jury instruction on specific intent. *See id.* Our court affirmed the conviction and sentence. *See State v. Fountain*, No. 07-0999, 2008 WL 4530696, at *9-10 (Iowa Ct. App. Oct. 1, 2008). We reasoned the given "general intent instruction succinctly encompassed the applicable law on this charge" because "the subject assault was not a specific intent crime." *Id.* at *10. The supreme court vacated our decision and held "the trial court erred in failing to

instruct on specific intent because the crime of assault includes a specific intent element." *Fountain*, 786 N.W.2d at 265. In reaching its holding, the court explained:

> The elements of assault under Iowa Code section 708.1 have not changed since our decision in *Heard*. Under this section, a defendant must commit an act that he intends to cause pain or injury to the victim or to result in physical contact that would be insulting or offensive to the victim or to place the victim in fear of physical contact that will be injurious or offensive. Iowa Code § 708.1(1), (2). Because the elements of these assault alternatives include an act that is done to achieve the additional consequence of causing the victim pain, injury or offensive physical contact, the crime includes a specific intent component. *See Heard*, 636 N.W.2d at 231-32. Therefore, we adhere to our prior decisions holding that the 2002 amendment "did not alter the substantive content of the statute." *Bedard*, 668 N.W.2d at 601.

*Id.*

Although the post-amendment cases have explicitly declined to address the question of whether assault should be classified as general intent or specific intent crime, the cases do make clear several things: first, despite the legislature's clear intent to abrogate the decision, *Heard*—as affirmed by *Bedard*, *Keeton*, *Wyatt*, and *Fountain*—is controlling legal authority; second, the 2002 amendment was ineffective insofar as it failed to amend the elements of the assault statute as those elements were interpreted in *Heard*; and third, the first two modes of assault set forth in section 708.1 contain specific intent elements that must be proved beyond a reasonable doubt. The continuing requirement that the State prove specific intent under the first two modes of assault in section 708.1 necessarily controls our resolution of the question presented herein.

The supreme court has held—without limitation or equivocation—the defense of diminished responsibility "is available to *any* crime in which specific

intent is an element." *State v. McVey*, 376 N.W.2d 585, 587 (Iowa 1985) (emphasis added); *see State v. Jacobs*, 607 N.W.2d 679, 684 (Iowa 2000) (stating defense is available "in those instances in which the State must prove defendant's specific intent as an element of the crime charged"); *Veverka v. Cash*, 318 N.W.2d 447, 449 (Iowa 1982) (stating defense is available "where [specific] intent is an element of the crime charged"); *State v. Barney*, 244 N.W.2d 316, 318 (Iowa 1976) ("Because the specific intent is of such crucial importance as to be the gist of the crime we believe it follows defendant should have been allowed to introduce evidence to negate it."). We note the cited cases do not state the defense of diminished responsibility is available to a defendant only when charged with an offense labeled or categorized as a specific intent crime and is not available when charged with an offense labeled or categorized as a general intent crime. Instead, the controlling cases make clear that the defendant's entitlement to assert the diminished responsibility defense is contingent upon whether an *element* of the offense—without regard to the label attached to the offense itself—requires proof of specific intent. *See Barney*, 244 N.W.2d at 318 ("We agree evidence of diminished responsibility should be admissible as a defense in *any* crime which requires proof of a specific intent as an element." (emphasis added)); *Gramenz*, 126 N.W.2d at 288 (adopting defense).

We are not at liberty to overrule controlling supreme court precedent. *See State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990). Thus, so long as our supreme court holds that the first two alternatives of assault set forth in Iowa Code section 708.1(1) and (2) require the State prove the defendant acted with a

specific intent, and so long as other controlling authority holds the defense is available where specific intent must be proved, it appears that evidence of diminished responsibility is admissible as a defense.

The State resists this conclusion. The State argues that the statute and the case law can be reconciled because the legislature's intent in amending the statute was to prohibit a defendant charged with assault from relying on the defense of diminished capacity or intoxication notwithstanding the requirement that the State be required to prove a specific intent element. Stated differently, the State contends that legislature intended the sentence, "[a]n assault . . . is a general intent crime," to mean that "assault is an offense that contains a specific intent element, but defendants charged with the offense of assault shall not be allowed to rely on defenses to disprove the specific intent element of the offense despite common law and statutory authority to the contrary." The State cites the following discussion in *Fountain* in support of its argument:

> Our conclusion that assault includes an element of specific intent is not inconsistent with the legislature's action in amending the statute. As we discussed, the legislature did not change the elements of an assault; it merely designated assault as a general intent crime. In criminal law, the designation of an offense as a general intent crime may carry with it certain consequences. Although we do not decide the effect or constitutionality of this amendment to the assault statute, we believe the amendment was simply an attempt to prevent a defendant charged with assault from relying on the defenses of intoxication and diminished capacity.

*Id.* at 265. The State's argument is unavailing.

First, *Fountain* is not controlling on this issue. The sole issue on appeal in *Fountain* was whether defendant's counsel rendered constitutionally ineffective assistance of counsel by failing to request a specific intent instruction in a

prosecution under alternative one of the assault statute. *See id.* at 262. The issue of the defenses available to the defendant was not raised in *Fountain.* Because the issue was not raised, the *Fountain* court did not have the advantage of considering full briefing and argument on the issue. Indeed, recognizing as much in the above-quoted passage, the court expressly stated that it did "not decide the effect or constitutionality of [the] amendment to the assault statute." *Id.* at 265. *Fountain* thus raised only a possible construction of the statute, but not a controlling construction of the statute. *Fountain's* statement regarding the construction of the assault statute as it relates to the availability of defenses was thus dictum and not binding precedent. *See Boyles v. Cora*, 6 N.W.2d 401, 413 (1942) (defining dictum as "passing expressions of the court, wholly unnecessary to the decision of the matters before the court"). Further, the court's statement in *Fountain* is contrary to the previously-cited cases holding the defense is available *in any case* in which the State must provide specific intent. *See Jacobs*, 607 N.W.2d at 684; *McVey*, 376 N.W.2d at 587; *Veverka*, 318 N.W.2d at 449; *Barney*, 244 N.W.2d at 318. We are not at liberty to ignore these controlling cases.

Second, the legislative history does not support the conclusion that the 2002 amendment was intended to preclude the assertion of defenses to the assault statute without regard to the elements of the offense. Recall that the 2002 amendment was passed in response to *Heard*. *See* H.F. 2546 Explanation. *Heard* held that alternative one in the assault statute required proof of specific intent, a holding that was a significant break from prior law. *Heard*, 636 N.W.2d at 232. Neither the defense of diminished responsibility nor intoxication was at

issue in *Heard*. It would thus seem odd to conclude that the legislative response to *Heard* was to address an issue not raised or decided by that case. This is borne out by the legislature's own explanation of its amendment. The explanation accompanying the house file discussed *Heard* and only the elements of the offense. *See* H.F. 2546 Explanation*.* There legislature's explanation of the bill does not refer to the defenses of intoxication or diminished responsibility. *See id.* As further evidence the legislature did not intend to restrict these defenses without regard to the substantive elements of the offense, the 2002 amendment left unchanged Iowa Code section 701.5, which still provides the defense of intoxication is available "in proving the person's specific intent." Surely, if the legislature's intent was to restrict this defense without regard to intent, it would have amended the statute providing for the defense to indicate as much.

Third, the State erroneously conflates the distinct concepts of legislative intent and legislative expectation. Our rules of statutory interpretation and construction provide that we are to give legal effect to the legislature's intent where possible. *See Finders*, 743 N.W.2d at 548. By this we mean that we give legal effect to the legislature's intent as opposed to the legislature's expectation. Stated differently, the focus of our inquiry is to give legal effect to what the legislature actually said as expressed in the text of the statute at issue as opposed to what the legislature thought might happen as a consequence of its legislative action. *See Mulhern v. Catholic Health Initiatives*, 799 N.W.2d 104, 113 (Iowa 2011) ("We determine the legislature's intent by the words the legislature chose, not by what it should or might have said."). Consider this case.

The plain language of the 2002 amendment and the legislature's own explanation of the 2002 amendment evidences only that the legislature intended to say the assault statute should be interpreted in such a way as to not require the State to prove specific intent as an element of the offense of assault. Given the law at the time of enactment (providing the defenses of diminished responsibility and intoxication are not available as a defense where only general intent need be proved), the legislature may have expected that the defenses would no longer be available in assault cases. But, critically, the expected result would only occur as a legal consequence of eliminating the specific intent element from the offense of assault. *Bedard*, *Keeton*, *Wyatt*, and *Fountain* all conclude the 2002 amendment did not achieve the stated legislative intent of removing the specific intent elements from the offense of assault. As a result, the expected legal consequence does not follow.

We address two final arguments raised by the State: first, our construction of the statute renders the 2002 amendment a nullity; and second, public policy militates in favor of precluding the defenses. With respect to the first, it is true that we "avoid[ ] interpreting a statute in such a way that leads portions of it to be redundant or irrelevant." *State v. Spencer*, 737 N.W.2d 124, 130 (Iowa 2007). On close scrutiny, however, the challenged construction does not render the amendment a nullity. *Bedard*, *Keeton*, *Wyatt*, and *Fountain* address only the issue of whether specific intent is an element of assault as defined in the first two alternatives of the assault statute. Likewise, the only question presented in Beck's appeal is whether a defendant charged under one or both of the first two alternatives of the assault statute may assert the defense of diminished

responsibility. *Bedard* and its progeny did not address the issue of whether the State must prove specific intent under the third alternative set forth in the assault statute. *See* Iowa Code § 708.1(3) (providing that a person commits assault when, without justification, the person "[i]ntentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another"). Likewise, we do not address the issue of whether a defendant charged under this alternative definition of assault could assert the defense of diminished responsibility. Therefore, the 2002 amendment has continued effect.

With respect to the second argument, the State's policy argument does not carry the day. The State argues that allowing the defenses to be asserted in response to an assault charge makes prosecution of the offense more difficult because alcohol frequently is involved in an assault offense, particularly bar fights and domestic abuse assaults. This argument is inapplicable to Beck, who asserts a defense of diminished responsibility and not a defense of intoxication. The fact that "bar fights and domestic assaults routinely involve alcohol" has no relevance to Beck's defense of diminished responsibility. Allowing the defense of diminished responsibility also does nothing to "undermine the protective purpose of our domestic abuse statutes." *Heard*, 636 N.W.2d at 233-34 (Neuman, J. concurring specially). Moreover, even though the State raises legitimate policy concerns, that does not give us liberty to ignore controlling decisions holding "evidence of diminished responsibility should be admissible as a defense in *any* crime which requires proof of a specific intent as an element." *Barney*, 244 N.W.2d at 318.

IV.

Because the first two modes of committing assault set forth in Iowa Code section 708.1(1) and (2)—as interpreted in *Heard*, *Bedard*, and the above-discussed cases—each contain specific intent elements, and because the defense of diminished responsibility is available to challenge any offense in which specific intent must be proved, the district court did not err in concluding that Beck may assert the defense of diminished responsibility.

**AFFIRMED.**