# IN THE COURT OF APPEALS OF IOWA

———————————

No. 24-1923
Filed March 11, 2026

———————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**Jereme Michael Owens,**
Defendant–Appellant.

———————————

Appeal from the Iowa District Court for Mahaska County,
The Honorable Myron Gookin, Judge.

———————————

**AFFIRMED**

———————————

Erin Carr of Carr Law Firm, P.L.C, Des Moines, attorney for appellant.

Brenna Bird, Attorney General, and Genevieve Reinkoester, Assistant
Attorney General, attorneys for appellee.

———————————

Considered without oral argument
by Schumacher, P.J., Chicchelly, J., and Doyle, S.J.
Opinion by Chicchelly, J.

**CHICCHELLY, Judge.**

Jereme Owens appeals his jury conviction for stalking in violation of a protective order.  On appeal, Owens argues there was insufficient evidence to show (1) he engaged in a course of conduct, (2) he intended to cause fear or harm, and (3) the victim felt terrorized, intimidated, or threatened.  Upon our review, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

Owens and M.K. had an on-again, off-again relationship for many years.  They grew up together and started dating in high school.  While dating, Owens and M.K. had two children.  But in 2019, M.K. ended the relationship for good after the relationship caused her mental and financial strain.

The two went their separate ways until April 2023 when Owens inserted himself back into M.K.'s life.  As M.K. testified, Owens "refused to leave [her] alone." He would show up at M.K.'s home and work.  And Owens even drove through his daughter's place of employment on at least one occasion.  Feeling scared and embarrassed, M.K. began to call the police every day for a week leading to Owens being arrested.

A no-contact order was put in place in May 2023 listing M.K. and the parties' children as protected parties.  Owens was convicted of harassment.  Our review of the record shows three modifications of the no-contact order allowing Owens to contact one of his children or to discuss parenting with M.K., but all other contact with M.K. was prohibited.

On one occasion, Owens came to M.K.'s residence, with her permission, to help their daughter with her car.  During this time, M.K. left the house to avoid contact with him.  But after this interaction, Owens began

to contact M.K. over text.  The texts became constant and progressively more concerning.

Owens's barrage of text messages began as an attempt to ask M.K. to hang out with him but progressed to accusatoions and appeared to show Owens was watching M.K.'s home.  On one occasion Owens texted, "Does this dude park down the road from the house and sleep with you every night." In multiple texts per day, Owens asked M.K. what her plans were and whether he could be around her.  But after Owens began asking her about her Facebook friends, M.K. put a stop to it by telling Owens, "You need to stop all of this Jereme.  Stay off my Facebook[,] stop questioning me every chance you get."

But Owens's behavior was not restricted to text messages.  M.K. recounted, "He would drive past my house, honk the horn.  He would do burnouts. He would pull into my driveway with the lights on, the radio loud, or yelling outside of my house. He would throw things at my house."  And Owens would knock on the front and back door of the house until M.K. told him he needed to leave her home.  In total, M.K. recounted having to tell Owens to leave her alone over fifty to one-hundred times.

As a result, the Mahaska County Attorney charged Owens with stalking in violation of Iowa Code section 708.11(3)(a)(1) (2024).  The matter proceeded to a jury trial where Owens was convicted.  The district court sentenced Owens to an indeterminate term of incarceration not to exceed ten years.  Owens now appeals.

## STANDARD OF REVIEW

We review sufficiency-of-the-evidence claims for correction of errors at law.  *See State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021).  "In determining

whether the [factfinder]'s verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (citation omitted). We do not require corroboration of victim testimony, nor do we substitute our view of the evidence for that of the factfinder. *State v. Hernandez*, 20 N.W.3d 502, 507–08 (Iowa Ct. App. 2025) (en banc).

## DISCUSSION

Owens challenges the sufficiency of the evidence supporting his stalking conviction. Specifically, he argues the State provided insufficient evidence that he engaged in a course of conduct and intended to cause the victim fear or harm. Also, he argues there is insufficient evidence that the victim felt terror, intimidated, or threatened. Unchallenged jury instructions become the law of the case for purposes of our review of sufficiency of the evidence. *State v. Mathis*, 971 N.W.2d 514, 518 (Iowa 2022). The jury's instructions for stalking in violation of a protective order required the State to prove:

1. On or about the period between June 21, 2024, and July 2, 2024, the defendant purposefully engaged in a course of conduct directed at [M.K.] that would cause a reasonable person to feel terrorized, frightened, intimidated or threatened.

2. The defendant knew or should have known that [M.K.] would feel terrorized, frightened, intimidated or threatened.

3. Defendant's course of conduct directed at [M.K.] occurred while defendant was subject to restrictions contained in a criminal or civil protective order.

*See* Iowa Code § 708.11(2).

4

## I. Course of Conduct

We must first examine if there was substantial evidence of a course of conduct that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened or to fear bodily injury to, or death. As relating to the facts here, "'course of conduct' means repeatedly maintaining a visual or physical proximity to a person without legitimate purpose, . . . or repeatedly conveying oral or written threats, threats implied by conduct, or a combination thereof, directed at or toward [M.K.]." *See* Iowa Code § 708.11(1)(b).

We find the course of conduct element is easily satisfied in this case. There are over one hundred unwanted text messages in the record sent by Owens. Owens argues these do not constitute part of the course of conduct because they often express love and are not threatening. But "making a threat is not an element of our stalking statute." *State v. Evans*, 671 N.W.2d 720, 726 (Iowa 2003). And the record demonstrates Owens did not stop at text messages, there were also multiple phone calls and voicemails that lacked legitimate purpose.

Additionally, M.K. testified to a series of incidents of Owens being in "visual or physical proximity" to her that we find were without legitimate purpose. *See* Iowa Code § 708.11(1)(b). These include Owens (1) driving by M.K.'s house on multiple occasions, (2) doing donuts in proximity to her house, (3) pulling into M.K.'s driveway with his headlights and radio on, (4) yelling outside M.K.'s house, and (5) knocking on her front and back doors. Considering all of these instances plus the text messages, we find there was substantial evidence Owens's course of conduct satisfied the first element of stalking.

## II.    Defendant's Intent

Next, Owens argues there was insufficient evidence that he intended to cause fear or harm.  We recently addressed a similar argument in *State v. Ethier* where a panel of our court wrote:

> As to mens rea, stalking is a general-intent crime.  *State v. Neuzil*, 589 N.W.2d 708, 711–12 (Iowa 1999).  The "focus is not on the defendant's mental state but on the result defendant's purposeful acts cause in a reasonable person."  *Id.* at 711.  The crime does not require "the stalker actually intended to cause fear in the victim," only that "the stalker consciously engaged in conduct that he knew or should have known would cause his victim to be afraid."  *Id.* (emphasis omitted).  This interpretation—requiring only general intent—ensures stalkers cannot "avoid conviction by asserting an emotional inability to form the requisite specific intent."  *Id.* at 712.

No. 24-1184, 2025 WL 2924963, at *3 (Iowa Ct. App. Oct. 15, 2025).  Having clarified the intent required, we find there is substantial evidence that Owens "knew or should have known would cause his victim to be afraid."  *See Neuzil*, 589 N.W.2d at 711.

We find Owens's knowledge can be proven by the fact that his conduct occurred in violation of a no-contact order.  *State v. Helmers*, 753 N.W.2d 565, 568 (Iowa 2008) (noting a no-contact order is "a key piece of evidence" showing that a defendant was aware his course of conduct could place the victim in reasonable fear of bodily injury); *Neuzil*, 589 N.W.2d at 712 ("A stalker should know that his actions are unappreciated if he was served with a court order . . . ." (citation omitted)).

And we find the knowledge element is satisfied because he continued his conduct after being convicted of harassment for similar conduct.  *See State v. Taylor*, 689 N.W.2d 116, 128 n.6 (Iowa 2004) ("The relationship between the defendant and the victim, especially when marked by domestic violence,

sets the stage for their later interaction."); *State v. Bonert*, No. 11-1677, 2012 WL 4550851, at *5 (Iowa Ct. App. Oct. 3, 2012) (finding a defendant's drive-bys past the victim's residence could cause a reasonable person fear because of the history of domestic violence between the parties); *State v. Moyle*, No. 23-1235, 2025 WL 2057646, at *6–7 (Iowa Ct. App. July 23, 2025) (finding a defendant's previous convictions supported an inference that he knew or should have known his drive-bys were threatening). Accordingly, we find there was substantial evidence supporting the knowledge element of stalking.

### III.    Victim's Fear

Finally, Owens argues there was insufficient evidence that M.K. felt "terrorized, frightened, intimidated or threatened." We disagree. M.K. testified numerous times to her fear of Owens. On one occasion she testified to being afraid because Owens "was becoming more and more aggressive with his demand to be around [her]." She also testified "I was afraid that anything is possible. He may not have physically hurt me before, but it takes one time, one instance." The jury was in the best position to evaluate M.K.'s testimony, and they credited it by finding Owens guilty. *See State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022) (stating it is "for the jury to decide which evidence to accept or reject"). Accordingly, we find sufficient evidence supports this element of stalking.

## CONCLUSION

Having found substantial evidence supports each element of stalking in violation of a protective order, we affirm Owens's conviction.

**AFFIRMED.**