# IN THE COURT OF APPEALS OF IOWA

No. 19-1417
Filed May 12, 2021

**STATE OF IOWA,**
　　Plaintiff-Appellee,

**vs.**

**WILLIAM BURTON,**
　　Defendant-Appellant.
_____

　　Appeal from the Iowa District Court for Polk County, Randy V. Hefner, Judge.

　　William Burton appeals his conviction for second-degree robbery.
**AFFIRMED.**

　　Erin M. Carr of Carr Law Firm, P.L.C., Des Moines, for appellant.

　　Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

　　Considered by Bower, C.J., and Tabor and Ahlers, JJ.

**BOWER, Chief Judge.**

William Burton appeals his conviction for second-degree robbery, contending there is insufficient evidence to sustain the conviction. Because substantial evidence supports a finding Burton purposely put his victim in fear of immediate serious injury, we affirm.

Dustin Hammond knew Mikayla Croy as Minnie Molly. Minnie Molly invited Hammond to an apartment complex on January 8, 2018. Hammond believed they were going to hang out at her friend's borrowed apartment and smoke marijuana. However, Croy and Burton had previously discussed a plan for Croy to lure Hammond to the area and Burton would rob Hammond at gunpoint.

When Hammond arrived at the south-side apartment to meet Croy, she took him into the apartment's common area. She then told him it was the wrong building and led Hammond back down the hall to leave. On the way out, Burton passed them in the hallway. Hammond testified, "And as soon as I passed his shoulder, he turned around and put a gun to the back of the head, grabbed m[e] by the shoulder, pushed me out of the building." Hammond acknowledged he was "pretty scared" and "shook up." Burton demanded the keys to Hammond's vehicle. Croy and Hammond took "everything" out of Hammond's pockets, including his phone, keys, wallet, and cash. Croy took Hammond's keys and ran to his vehicle, while Burton continued to hold something to Hammond's head. On cross-examination Hammond testified:

> Q. So as Mikayla gets in the truck, who are you mostly paying attention to? A. The person that was holding the gun to my head.
> Q. Well, are you facing him, or are you trying to get, watching Mikayla get into your truck? A. I mean the gun was held to the back

of my head as I watched her run to my vehicle and get in it and start it, and then I was then released.

Q. And then you went rushing towards your truck, or towards your mother's truck, right? A. Only once I saw the person with the gun turn their back to get into their vehicle.

Burton described the male assailant: "I saw a heavy-set man. I guess I don't, maybe a little bit shorter than me, pointing a gun at me. And I just, all I really remember like specifically was the tattoos on his knuckles that was holding the gun." He also testified, "I thought that I had recognized him from somewhere I had been prior one other time, but I wasn't positive if it was the same person or not."

Once Burton turned his back and got into his own truck, Hammond ran after his vehicle[1] yelling. Someone from the apartment complex told him to be quiet. Hammond yelled his car was being stolen, and the person called the police. Croy and Burton both drove away.

Hammond waited for the police and told them his vehicle, phone, and wallet had been stolen. He did not tell them he had brought a tin of marijuana with him, which had been stolen as well. Hammond was asked if he know who was involved, and he told them Minnie Molly and "mentioned that [he] thought [he] recognized the man holding the gun to [his] head, but [he] wasn't positive if it was who [he] thought it was." He gave the officers a description of the male. An officer drove Hammond to a residence where he thought he had seen the male. However, neither Hammond's vehicle nor any other vehicle he recognized was there at the time.

---

[1] The vehicle belonged to his mother.

Police eventually recovered the stolen vehicle, but Hammond's wallet, identification, and phone were never found.

Hammond later called police to report he had seen the man with the gun on television and identified Burton. Hammond also picked Croy out of a photo lineup. Burton and Croy were charged with first-degree robbery. Croy entered into a plea agreement and testified at Burton's trial.

Croy testified she was homeless for a time and Burton allowed her to stay at his residence with him and his girlfriend for some weeks. Croy admitted she was using methamphetamine during this period and had used with Burton. Burton told Croy she needed to "come up with a way to gain money to get them for living at their house, and if I didn't it was or else." Croy admitted conspiring with Burton to rob Hammond, to stealing items from Hammond while Burton kept him at bay, and to driving off with Hammond's vehicle. She also testified she and Burton drove the respective vehicles to a preplanned meeting place. When they rendezvoused, Burton had a firearm in his truck, which discharged toward her but hit the truck's passenger door.

Burton testified, denying any involvement with either Croy or Hammond.

The jury was instructed:

> The State must prove all of the following elements of Robbery in the Second Degree:
> (1) On or about the 8th day of January, 2018, [Burton] had the specific intent to commit a theft.
> (2) To carry out that intention or to assist him in escaping from the scene, with or without the stolen property, [Burton]:
> (a) Committed an assault on Dustin Hammond as defined in Instruction Number 22 and in committing the assault [Burton] intended to inflict a serious injury upon Dustin Hammond, cause bodily injury or mental illness to Dustin Hammond, used or displayed

a dangerous weapon in connection with the assault, or cause serious injury to Dustin Hammond; or
    (b) Threatened Dustin Hammond with or purposely put Dustin Hammond in fear of immediate serious injury.

The jury found Burton guilty of second-degree robbery. Burton appeals.

Burton notes the jury necessarily rejected a finding Burton "used or displayed a dangerous weapon in connection with the assault" when it acquitted Burton of first-degree robbery. Burton argues there is insufficient evidence to support a finding he purposely put Hammond in fear of immediate serious injury.[2]

"We review the sufficiency of the evidence for correction of errors at law." "We view the evidence in the light most favorable to the State, 'including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" We determine evidence is sufficient when the record contains substantial evidence to support conviction. "Substantial evidence exists when the evidence 'would convince a rational fact finder the defendant is guilty beyond a reasonable doubt.'"

*State v. Donahue*, 957 N.W.2d 1, 7 (Iowa 2021) (citations omitted).

Even assuming the jury found Burton was not armed at the time of the robbery, viewing the evidence in the light most favorable to the State, a rational jury could find Burton purposely put Hammond in fear of immediate serious injury. Hammond testified Burton placed a gun to the back of his head and shoved him out of a building at 3:00 a.m., demanding he empty his pockets and give up the keys to his vehicle. Hammond testified he did not run after his vehicle as Croy began to drive away because Burton had a gun to his head. Only when Burton left did Croy respond. A reasonable jury could have found Burton acted in a manner

---

[2] The State asserts Burton failed to preserve error. We choose to pass on the preservation issue and address the merits.

indicating he was armed in order to put Burton in fear of immediate serious injury. *See State v. Heard*, 636 N.W.2d 227, 232 (Iowa 2001) ("From the totality of these facts, a fact finder could reasonably infer that by his actions—both verbal and nonverbal—Heard intended to place Hahn in fear of immediate physical contact that would be painful, injurious, or offensive if Hahn did not comply with his demand of money."); *see also State v. Tate*, No. 15-1205, 2016 WL 3275447, at *2 (Iowa Ct. App. June 15, 2016) (citing cases).

Burton makes much of inconsistencies in Croy and Hammond's testimony. But it is for the jury to determine credibility. *See State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) ("It is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." (citation omitted)). Because substantial evidence supports a finding Burton purposely put Hammond in fear of immediate serious injury, there is sufficient evidence to support his second-degree-robbery conviction. We affirm.

**AFFIRMED.**