# IN THE COURT OF APPEALS OF IOWA

No. 22-0152
Filed November 21, 2023

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**RYAN MATTHEW ALLEN,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Gregg R. Rosenbladt, Judge.

A defendant challenges his conviction and sentence for second-degree robbery. **CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING WITH DIRECTIONS.**

Martha J. Lucey, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Badding and Chicchelly, JJ.

**TABOR, Presiding Judge.**

"You know what, screw it.  I've already broken the law, I'm already here, I'm going to try to get into the safe."  That's what Ryan Allen thought after he broke through the Dairy Queen (DQ) roof and dropped into the closed business.  Allen told the jury it was an inside job, that a former DQ manager gave him the safe code, but it didn't work.  In desperation, he tried to pry open the safe with a hammer and other tools he came across in the storage room.  As he struggled to access the cash, in walked A.P.—the DQ employee in charge of opening that morning.

According to A.P., Allen threatened her and put her in fear of serious injury.  He denied it.  The jury believed her, convicting Allen of second-degree robbery.  The district court imposed a prison sentence not to exceed ten years with a sixty-five percent mandatory minimum.  Allen now challenges the sufficiency of the evidence and seeks resentencing for the court to consider a validated risk assessment under Iowa Code section 901.11(4) (2021).

Because the State presented ample evidence to support the verdict, we affirm his conviction.  As for his sentence, we find the district court abused its discretion in setting the mandatory minimum term while missing pertinent information mandated by section 901.11(4).  We thus reverse and remand for resentencing—before which the department of correctional services should file an amended presentence investigation (PSI) report including a validated risk assessment.

## I.      Facts and Prior Proceedings

"I thought he was going to kill me.  I thought—because he said that—he told me he was going to hurt me real bad if I did anything, so I was just trying to follow

his direction. I was just trying to comply." That's how A.P. described her experience to jurors at Allen's trial. A.P. told a police officer that she thought Allen wielded a knife, but after reviewing the video footage from inside the DQ realized that he held a broken hammer.

After police investigated the DQ break-in, the State charged Allen with robbery in the first degree and burglary in the first degree. *See* Iowa Code §§ 711.2, 713.3. Before the State presented its case at trial, the parties stipulated that Allen was the person who broke into the Dairy Queen in Mason City in August 2021, "as shown in pictures and videos." At the same time, the prosecutor dismissed the burglary charge. After hearing the evidence, the jury acquitted Allen of robbery in the first degree and convicted him of robbery in the second degree. Allen appeals, challenging the sufficiency of the evidence and his sentence.

## II. Scope and Standards of Review

We review Allen's sufficiency challenge for the correction of errors at law. *See State v. Crawford*, 974 N.W.2d 510, 516–17 (Iowa 2022). Under this standard, we view the record in the light most favorable to the State and uphold the verdict if it is supported by substantial evidence. *Id.* Evidence is substantial if it could persuade a rational jury that Allen was guilty beyond a reasonable doubt. *See id.* We draw all legitimate inferences to support the verdict. *Id.*

Likewise, on the sentencing claim, our review is for the correction of legal error. *State v. Thompson*, 494 N.W.2d 239, 240 (Iowa 1992). We will find error if the sentencing court abused its discretion or Allen can show a defect in the sentencing procedure. *See State v. Damme*, 944 N.W.2d 98, 103 (Iowa 2020).

### III.    Analysis

### A.  Substantial Evidence

Allen argues that the evidence was insufficient to sustain his conviction for second-degree robbery.  For that offense, the jury had to find proof beyond a reasonable doubt for two elements: (1) Allen had the specific intent to commit a theft and (2) to carry out his intended theft or to help him escape from the scene with or without stolen property, Allen (a) assaulted A.P. or (b) threatened A.P. with or purposely put her in fear of immediate serious injury.  Iowa Code §§ 711.1, 711.3.  Allen contends the State did not prove the second element.

Allen asserts the State fell short in proving the assault alternative because "the jury (in acquitting Allen of the first-degree robbery offense) determined no dangerous weapon was involved."  *See id.* § 708.1(2)(c).  And the video from inside the DQ shows that he did not make physical contact with A.P.  *See id.* § 708.1(2)(a).  As for the third alternative of assault, Allen argues that A.P. "appeared calm throughout her interaction" with him, undermining a finding that she experienced fear of immediate physical contact.  *See id.* § 708.1(2)(b).

In defending the verdict, the State argues that even if Allen did not use the broken hammer as a dangerous weapon, he still intended to place A.P. in fear of immediate physical contact that would be "painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act."  We agree with the State's argument.  Viewing A.P.'s testimony and the video in the light most favorable to the verdict, we find substantial evidence of an assault.  *See State v. Heard*, 636 N.W.2d 227, 231−32 (Iowa 2001) (explaining fact finder should consider totality of the evidence bearing on defendant's actions, both verbal and nonverbal, in

determining whether an assault occurred). Allen confronted A.P., who was alone in the store, while masked and gloved. He demanded help with the safe, took her phone and keys, and told her to get on the ground. Those actions satisfy the second element of robbery in the second degree.

### B. Mandatory Minimum Sentence

Having found substantial evidence to support the verdict, we turn to Allen's sentencing claim. Allen's conviction for second-degree robbery was a forcible felony. Iowa Code §§ 702.11(1), 711.3. So the district court had no choice but to send him to prison for an indeterminate ten-year term. *Id.* § 902.9(1)(d). Yet the court recognized it had discretion to set the length of the mandatory minimum term between five and seven years. *See id.* § 902.12(4). It settled on six and one-half years. But the court did so without the benefit of a validated risk assessment in the PSI.[1]

The district court must determine the length of the mandatory minimum sentence "based upon all pertinent information including the person's criminal record, a validated risk assessment, and the negative impact the offense has had on the victim or other persons." *Id.* § 901.11(3). On appeal, Allen contends the court ignored that statute:

> No validated risk assessment was presented to or considered by the sentencing court, as required under [section] 901.11(4). None is referenced in the PSI report, nor otherwise provided to the court at sentencing. The sentencing court therefore necessarily erred and abused its discretion by selecting an elevated minimum sentence

---

[1] That omission was not the only problem with the PSI. The document originally filed with the court recommended a term of probation. The next day, the second judicial district department of correctional services filed an addendum, noting Allen was convicted of a forcible felony and a prison sentence was mandatory.

without consideration of a validated risk assessment as required under statute.

The State does not contest Allen's reading of section 901.11(3) as requiring the sentencing court to base its determination of the mandatory minimum term on a validated risk assessment, along with other pertinent information. Instead, the State argues that Allen waived his challenge by failing to object to the lack of a risk assessment at the sentencing hearing. *See State v. Gordon,* 921 N.W.2d 19, 22 (Iowa 2018); *State v. O'Connor*, No. 18-0376, 2020 WL 109509, at *1−2 (Iowa Ct. App. Jan. 9, 2020). Citing *Gordon* and *O'Connor*, the State contends that the normal rules of error preservation apply to the use of risk assessments at sentencing. The State acknowledges that those cases address challenges to the court's reliance on risk assessments included in the sentencing record, while this case involves the *lack* of a risk assessment in the PSI. But the State insists "the same principles apply."

We disagree. In both *Gordon* and *O'Connor*, the appellate courts found that the defendants needed to offer evidence to show that the risk assessment tools used by the department of corrections violated their rights. *Gordon*, 921 N.W.2d at 23−24; *O'Connor*, 2020 WL 109509, at *3. By contrast, Allen is not challenging the sentencing court's reliance on a risk assessment, but the lack of one. The district department of corrections did not prepare a validated risk assessment for Allen, though the administrative rules require that information to be included in the PSI. *See* Iowa Admin. Code r. 201-41.2(3) ("The district department shall have written policies and procedures which ensure that the presentence investigation report includes an identification of client needs, protective factors and the results

of a validated risk assessment as approved by the department of corrections with collaborative input from the judicial districts and other affected stakeholders.").

Granted, the sentencing court asked Allen's counsel if he had "any changes, corrections, or objections to the PSI report." And counsel said "no." But that exchange did not show that Allen knowingly and voluntarily waived the requirement that a validated risk assessment be included in the PSI. *Cf. Thompson,* 494 N.W.2d at 241 (interpreting Iowa Code section 901.2 as allowing a court to waive the use of a PSI report, but not its preparation); *see also Campbell v. State*, 576 N.W.2d 362, 364 (Iowa 1998) ("[A] district court must determine whether a defendant's waiver of the use of a PSI report is knowing and voluntary and ensure that the defendant is aware the report could contain favorable information which could result in a lesser sentence.").

Because Allen did not knowingly and voluntarily waive the use of a validated risk assessment, we reverse and remand for resentencing. When setting the resentencing date, the district court should direct the department of correctional services to file an amended PSI report including a validated risk assessment. We take no position on the proper sentence on remand. After reviewing the risk assessment, the sentencing court has discretion to impose the same, a lesser, or an even greater mandatory minimum term.

**CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING WITH DIRECTIONS.**