# IN THE COURT OF APPEALS OF IOWA

No. 23-0896
Filed August 7, 2024

**STATE OF IOWA,**
　　Plaintiff-Appellee,

**vs.**

**DARIN EARL PETERSON,**
　　Defendant-Appellant.
_____

　　Appeal from the Iowa District Court for Muscatine County, Stuart P. Werling, Judge.

　　The defendant appeals his convictions for sexual abuse in the second degree. **AFFIRMED.**

　　Alfredo Parrish of Parrish Kruidenier, L.L.P., Des Moines, for appellant.

　　Brenna Bird, Attorney General, and Aaron Rogers, Assistant Attorney General, for appellee.

　　Considered by Tabor, P.J., and Greer and Schumacher, JJ.

**TABOR, Presiding Judge.**

Darin Peterson appeals his convictions of two counts of second-degree sexual assault. He raises four claims: (1) he contends the court improperly instructed the jury on the intent element of the offenses; (2) he asserts counsel was ineffective for failing to object to the erroneous instruction; (3) he accuses the State of failing to disclose evidence favorable to him; and (4) he argues that prosecutorial misconduct denied him a fair trial.

We find that the instruction did not prejudice Peterson and we lack authority to hear the ineffective-assistance claim. For the third and fourth claims, Peterson failed to preserve error. So, we affirm the convictions.

## I. Facts and Prior Proceedings

In 2018, Peterson was charged with two counts of second-degree sexual abuse, class "B" felonies, in violation of Iowa Code section 709.3(1)(b) (2018). The trial information alleged that he sexually abused his stepdaughter over a period of eighteen months. The court held Peterson's first trial in June 2022. That proceeding ended in mistrial, and a new trial commenced in November 2022.

After hearing all the evidence, the jury was instructed that Peterson was guilty of second-degree sexual abuse if the State proved two elements: (1) Peterson performed a sex act with the victim and (2) the victim was under the age of twelve. The instructions defined a sex act as "any sexual contact," and permitted the jury to "consider the type of conduct and the circumstances surrounding it in deciding whether the contact was sexual in nature." The jury did not receive any instructions on lesser included offenses.

In addition, the court provided the jury with the definition of specific intent, even though the charges did not include a specific-intent element:

> "Specific intent" means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind.
>
> Because determining the defendant's specific intent requires you to decide what he was thinking when an act was done, it is seldom capable of direct proof. Therefore, you should consider the facts and circumstances surrounding the act to determine the defendant's specific intent. You may, but are not required to, conclude a person intends the natural results of his/her acts.

And there was no instruction describing general intent crimes.

Peterson did not object to the specific intent instruction. And in closing arguments neither party discussed Peterson's intent. The jury returned guilty verdicts on both counts. After the verdicts, Peterson obtained new counsel and filed a motion in arrest of judgment and for new trial.

With substituted counsel, Peterson raised the specific-intent issue. He also raised claims that the State failed to produce the victim's completed cellphone records; the jury improperly sped up deliberations because of time constraints; the weight of the evidence did not support the verdicts; and previous counsel was ineffective for not objecting to the specific intent instruction. At the combined motion and sentencing hearing, counsel for Peterson discussed the jury instruction claim. After the court denied that claim, it asked counsel if there was more record Peterson wished to make. Counsel only brought up the deliberation timing claim. That issue is not renewed on appeal. And Peterson didn't ask for an amended or enlarged ruling on the other issues in his posttrial motion.

The court sentenced Peterson to twenty-five years imprisonment on each count to run concurrently. Peterson appeals.

## II. Analysis

### A. Jury Instruction Challenge

Peterson first contests the jury instructions. We review his challenge for the correction of legal error. *State v. Kraai*, 969 N.W.2d 487, 490 (Iowa 2022). "Even where the challenged instruction is erroneous, [we] will not reverse the jury's verdict unless the error was prejudicial." *State v. Schwartz*, 7 N.W.3d 756, 766 (Iowa 2024). He contends the court erred by instructing the jury on specific intent when second-degree sexual abuse is a general intent crime. Meanwhile, the court failed to instruct the jury on general intent. So, according to Peterson, the court did not provide the correct standard, which confused and misled the jury.

In response, the State asserts Peterson did not preserve this claim for appellate review because he did not object to the instructional error before closing arguments.[1] *See* Iowa R. Civ. P. 1.924; Iowa R. Crim. P. 2.19(4)(g) ("The rules relating to the instruction of juries in civil cases apply to criminal cases."). Indeed, Peterson did not raise the claim until his new trial motion. He acknowledged the lack of a timely objection but argued it was either structural error or ineffective assistance of counsel. But the trial prosecutor defended the instructions without discussing the lateness of Peterson's objection.[2] And the district court also

---

[1] The State also points out that Peterson's brief fails to include error-preservation statements. *See* Iowa R. App. P. 6.903(2)(a)(g)(1) (requiring that each appeal issue raised be accompanied by a "statement addressing how the issue was preserved for appellate review"). We choose to overlook that rule violation here.

[2] The prosecutor did argue that "this is a question that's better left for postconviction relief where his defense attorney can be questioned and asked for reasons as to why there was no objection to that." But the prosecutor continued to address the merits, saying: "there is nothing in the closings or statements that creates confusion to the jury as to the marshaling instruction."

reached the merits of the claim. The court agreed that giving the specific intent instruction was erroneous but

> the effect of the error was to place a higher burden on the State to establish the defendant's guilt than it should have done, because in a general intent instruction . . . the jury would not have had to have found that the defendant specifically intended to commit this crime, only that he had the general intent to commit a crime. So I don't think that the error was to the defendant's disadvantage. I think it was to the State's disadvantage, and yet the jury was able to find sufficient evidence to return a unanimous verdict.

Concluding the error was harmless, the court denied the motion.

Because the State did not pinpoint the untimeliness issue as a ground for relief in the district court, we do not rely on it now. *See DeVoss v. State*, 648 N.W.2d 56, 63 (Iowa 2002) ("Because error preservation is based on fairness, we think *both* parties should be bound by the rule."). But we do agree with the district court that Peterson was not prejudiced by the instructional error. The marshalling instruction did not contain an intent element, nor did it cross-reference the specific intent instruction. At most, the jury considered whether Peterson's acts were sexual in nature based on the type of conduct and circumstances. Even if the jury believed it had to find Peterson acted with specific intent, that standard heightened the State's burden. *See generally State v. Heard*, 636 N.W.2d 227, 232 (Iowa 2001) (explaining that specific intent crimes require proof that the accused wanted "to achieve some additional consequence"). Despite that, the jury found Peterson guilty. So, the instruction did not harm his defense, and we affirm the denial of the motion on that ground.

**B. Ineffective Assistance of Trial Counsel**

Peterson next contends his trial attorney was ineffective for failing to object to the jury instructions. The State counters that we cannot review ineffective-assistance-of-counsel claims on direct appeal. *See* Iowa Code § 814.7 (ineffective-assistance-of-counsel claims "shall not be decided on direct appeal from the criminal proceedings"); *State v. Treptow*, 960 N.W.2d 98, 103 (Iowa 2021). In his reply brief, Peterson does not respond to this point. While our analysis for the previous issue may render the question moot, we agree that section 814.7 bars our review of this claim.

**C. *Brady* Violation**

Peterson next contends that the State failed to turn over evidence favorable to him in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Because *Brady* protects due process rights, appellate review is de novo. *State v. Cahill*, 972 N.W.2d 19, 27 (Iowa 2022).

As part of their investigation, detectives downloaded information from cellphones belonging to Peterson and his stepdaughter. But, according to Peterson, the State failed to turn over the full records to him. Peterson also asserts that his stepdaughter underwent a medical examination that was never disclosed to him. Peterson raised these claims in his posttrial motion, but did not discuss them at the hearing, and the district court did not rule on them. Because there is no ruling, error is not preserved. *See Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." (quoting *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002)).

### D.  Prosecutorial Misconduct

As his final claim, Peterson accuses the State of prosecutorial misconduct during closing statements.  He asserts the prosecutor went outside the record by "alluding to the possibility" that Peterson deleted an image from his cell phone in anticipation of trial.  Again, this accusation was raised in the motion for new trial, but not ruled on by the court.  Because there is no ruling and no indication the court considered the issue, we find Peterson failed to preserve it for appeal.  *See Lamasters*, 821 N.W.2d at 864.

**AFFIRMED.**